People of State of Illinois ex rel. Antonia E. Rago, Appellee, v. Harry A. Lipsky et al., Members of Board of Election Commissioners of City of Chicago, Appellants.

Gen. No. 43,166.

Heard in the second division of this court for the first district at the October term, 1944. Opinion filed November 6, 1945. Released for publication November 20, 1945.

CASSIUS M. DOTY, of Chicago, for appellants.

URBAN A. LAVERY, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

On April 4, 1944 plaintiff filed a petition in the superior court for a writ of mandamus against the members of the Board of Election Commissioners of the City of Chicago to require them to permit her to remain registered as an elector and to vote under her maiden name of Antonia E. Rago, notwithstanding her marriage on February 12, 1944 to one William C. Mac-Farland. Defendants challenged the sufficiency of the petition by a motion to strike, which was denied by the court, and they were thereupon ordered to plead or answer within a day certain. In their verified answer they sought to justify their action in ordering cancellation of plaintiff's registration as an elector under her maiden name and in notifying her that they would refuse to permit her to remain registered and to vote under her maiden name or to vote without registering anew in accordance with the provisions of section

6–54 of the Election Code of 1943 (Ill. Rev. Stat. 1943, ch. 46 [Jones Ill. Stats. Ann. 43.670]). The cause was then continued to April 20, 1944 and by stipulation was submitted to the court on (1) plaintiff's verified petition, filed April 4, 1944; (2) defendants' motion to dismiss plaintiff's petition, filed and overruled April 6, 1944; (3) defendants' answer, filed April 10, 1944; and (4) a brief written stipulation of additional facts, filed April 20, 1944. Pursuant to hearing the court awarded plaintiff a writ of mandamus commanding and directing defendants as follows:

"A. Said defendants are ordered, directed and commanded forthwith to restore the records of registration of the petitioner and relator under the name of Antonia E. Rago to the active registration records and files of the Board of Election Commissioners of the City of Chicago, and particularly in Ward 8, Precinct 30, of the said City and to cease and desist the efforts and demands of the said Board that the petitioner and relator, Antonia E. Rago, must and shall register anew in the said precinct, ward and city, under another name than Antonia E. Rago; and that she specifically be not required by the defendants to register anew because of her marriage on February 12, 1944, to William C. MacFarland.

"B. And the defendants are further ordered, directed and commanded, notwithstanding the marriage of said petitioner and relator to William C. MacFarland on February 12, 1944, and without the registration of said petitioner and relator anew subsequent to her said marriage, hereafter to recognize and accept the registration of said petitioner and relator in the said precinct, ward and city under her name of Antonia E. Rago for succeeding elections so long as she shall be otherwise qualified to register and vote or until her registration shall otherwise have been changed or modified pursuant to law."

Defendants appeal.

From the stipulation of additional facts it appears that Antonia E. Rago is a member of the bar of the State of Illinois, having been admitted to practice in the year 1938. She holds a certificate of admission from the Supreme Court of Illinois under that name. She is also admitted to practice in the Federal courts in Chicago and in the Supreme Court of the United States, and in each instance her certificate of admission likewise runs to her under that name. She is listed under her maiden name in Gunthorp's Legal Directory of Chicago, the Chicago Telephone Directory, the Chicago telephone "Red Book" and in Martindale-Hubbel's National Legal Directory. For more than six years she has maintained her own law office in Chicago under the name of Antonia E. Rago, the lease of her office having been executed under that name, and her name appears in that form as an attorney at law both on the door of her law office and on her stationery letterheads which she uses in her professional business. She resides at 7848 Dobson avenue in the 30th precinct of the 8th ward of the City of Chicago, where she has lived substantially all her life, and voted under her maiden name since becoming of lawful age. On February 12, 1944 she married one William C. MacFarland, a mining engineer practicing in the City of Mexico, who "expressly approves of her plans" to continue her practice of law and her other business affairs under the name of Antonia E. Rago.

The ultimate question presented is the true meaning and intent of section 6-54 of the Election Code which provides that "any registered voter who changes his or her name by marriage or otherwise, shall be required to register anew and authorize the cancellation of the previous registration." Implied in the interpretation of that section and its application to the facts in this case is the determination (1) whether the

name of a registered woman voter is changed within the meaning of the statute by her marriage; (2) whether the provisions of section 6-54 are mandatory so as to disqualify a registered woman voter from continuing to register and vote under her maiden name after her marriage, or whether such voter may choose either to register and vote under her maiden name or to register anew under her marital name; and (3) whether under the undisputed facts in the record it became the duty of defendants, upon being informed as to plaintiff's marriage and change of name, to cause her registration under her maiden name of Antonia E. Rago to be cancelled and removed from the precinct registration lists.

■ ■ Notwithstanding petitioner's contention to the contrary, it is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and takes the husband's surname, with which is used her own given name. The general rule is thus stated in 45 Corp. Jur. 368, 38 Am. Jur. 600, 35 Am. Law Rep. 417, and innumerable cases cited and discussed by defendants. In *Freeman v. Hawkins,* 77 Tex. 498, 14 S. W. 364, the court held that constructive service in the maiden name of a married woman was invalid, saying that "On the marriage of Mary E. Robison the law conferred on her the surname of her husband. Bish. on Mar. and Div., 704. A citation, whether to be served personally or by publication, must contain the names of the parties to the action. . . . We are of opinion that a citation by publication requiring 'Mary E. Robison' to be cited and to appear was not sufficient to give the court jurisdiction to render a judgment that would bind 'Mary E. Freeman.' " In *Chapman v. Phenix Nat. Bank,* 85 N. Y. 437, plaintiff bought certain shares of stock which were issued to her under her maiden name, she not having been married until two years later. Subsequently a United States marshal, acting

under the confiscation acts passed during the Civil War, confiscated her dividends and stocks. The proceedings were conducted in her maiden name of "Ver S. Moore," and the plaintiff seeking to recover the dividends and stocks confiscated, claimed that the proceedings were invalid because she had been deprived of all notice. In supporting her contention the court said: "For several centuries, by the common law among all English speaking people, a woman, upon her marriage, takes her husband's surname. That becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. Her maiden surname is absolutely lost, and she ceases to be known thereby." In *Bacon v. Boston Elevated R. Co.*, 256 Mass. 30, 152 N. E. 35, the facts disclosed that plaintiff was married in 1921. She registered her car in 1923 under her maiden name and subsequently in that year she and her husband were injured in an automobile accident through the negligence of the defendant. Nevertheless, the court denied recovery on the ground that since the automobile was not properly registered it was a nuisance on the highway, saying that "when she applied for registration of the automobile in 1923 she did so in a name that was not hers; . . . . As matter of law after her marriage in 1921 her legal name was Alice W. Bacon. . . . The statute . . . contemplates that a motor vehicle shall be registered in the name of its owner. . . . It is manifest from the uncontradicted evidence that at the time of the accident the automobile was not legally registered and was a nuisance upon the highway, which precludes recovery by the owner." In the case of *In re Kayaloff*, 9 F. Supp. 176 (1934), it was held that a certificate of naturalization should not be issued to a married woman in her maiden name, notwithstanding the fact that she was a musician well known professionally by that name. She

sought naturalization in her maiden name because she feared financial loss in the event her naturalization certificate were issued in her husband's surname and a discrepancy be created between her naturalization certificate and her musical union card. In deciding that the petitioner had changed her name by marriage and could be naturalized only in her marital name, the court said, among other things, that "as all are well aware, many professional women of note and standing, and who are married, are known in private life by the surname of their respective husbands. In the artistic circles in which such women move, they are known by their stage or professional names. It is my judgment that none of them has been damaged professionally by the fact that, upon marriage, she took the surname of her husband. I am not convinced that any loss will accrue to petitioner if she be denied a certificate in her maiden name," citing the early New York decision of *Chapman v. Phenix Nat. Bank, supra.*

Neither of the parties has cited any Illinois decision directly in point, but the principle is clearly and fully established by the foregoing and other authorities cited in defendants' brief, wherein the courts have under varying facts and circumstances consistently held that by custom and authority a woman, upon her marriage, takes her husband's surname. There is nothing, however, in any of the Illinois cases which indicates any lack of adherence by Illinois courts to the established principles of the long and well-settled common law. In fact, the very statute now under consideration supports defendants' position that upon marriage and by the fact of marriage alone a woman changes her name so that her maiden name is lost and her new name consists of her own given name and her husband's surname. The statute declares that any registered voter who changes his or her name *by marriage* or otherwise shall be required to register anew. The provision is general and includes all changes of

name whether by court decree or by voluntary adoption. It expressly recognizes a change of name by marriage, and since it is only in the case of married women that there is any recognized custom or rule of law whereby marriage effects a change of name it must logically follow that when the legislature expressly referred to the fact that the name of a registered voter might be changed by marriage it had in mind the long-established custom, policy and rule of the common law among English speaking peoples whereby a woman's name is changed by marriage and her husband's surname becomes as a matter of law her surname.

The remaining and principal question for determination involves the effect of section 6–54 of the Election Code upon the manner in which married women shall register and vote in Illinois. Petitioner argues that that section does not in fact require a woman registered under her maiden name to register anew after her marriage under her marital name unless she chooses to regard her name as having been changed by her marriage, and to adopt her married name for voting purposes, and the able trial judge seems to have adopted that view when overruling defendants' motion to dismiss the petition, stating that in his opinion section 6–54 "amounts to nothing more than a request that the name be changed." In other words, petitioner and the court took the position that the section in question could be interpreted as directory and not mandatory. If that were the correct interpretation to be placed upon the statute, it would permit the act to be obeyed or disobeyed at the option of any voter who changes his or her name by marriage or otherwise, and the law would in effect become a nullity. The statute is clear and unambiguous. It requires reregistration by any registered voter who changes his or her name for any reason or by any means, whether by marriage, by judicial decree or by

voluntary adoption of a new name without judicial proceedings; and although we are not concerned with the reason underlying the legislature's enactment of the so-called Permanent Registration Law which requires any registered voter who changes his or her name *by marriage* or otherwise to register anew in the new name and authorize cancellation of the previous registration, it appears obvious that the provision was intended to prevent fraudulent duplication of registrations, and the question whether the dangers arising from such duplication are sufficient to make this re-registration provision desirable is, of course, a matter of legislative discretion.

██ ██ Whatever other considerations may enter into a discussion of the desire of a married woman to pursue a professional career under her maiden name and its remunerative effect upon her, the only issue here presented is the meaning of a positive law regulating the exercise of a statutory privilege. The right to register and vote is not a natural or inherent right, and the legislature may impose reasonable limitations on the right of suffrage. It is well settled that the right to vote is conditional and can be exercised only upon compliance with statutory requirements. *Clark v. Quick,* 377 Ill. 424. Compulsory registration as a prerequisite to the right to vote has been in force in Chicago, and all other cities which have adopted the City Election Act, since 1885, and the provisions in section 6–54 requiring every voter who changes his or her name by marriage or otherwise to register anew in the new name and authorize cancellation of the previous registration, were adopted by the legislature as part of the City Election Act in 1936. That the legislature may establish registration requirements which place reasonable limitations on the right to vote has long been the well-settled rule. *Pope v. Board of Election Com'rs of East St. Louis,* 370 Ill. 196; *Clark v. Quick, supra.*

It would seem to us to require no extended argument to conclude that the provisions of section 6–54 are imperative and show on their face that any voter who changes his or her name by marriage or otherwise is disqualified from remaining registered and voting under the former name and must, in order to preserve the right to vote, reregister in the new name. If petitioner were permitted to ignore her change of name by marriage and continue to remain registered and to vote under her maiden name, it would follow that any voter, man or woman, whose name is changed by judicial proceeding could likewise ignore that change and continue to remain registered and to vote under the former name, and the same would be true as to any voluntary change of name without judicial proceeding. Such a situation would promote fraud and confusion and make the provisions of the statute a nullity.

Directing attention to the precise language of section 6–54, we find that it states imperatively that any such voter "shall be required to register anew," and the apparent intent of the legislature that this should be mandatory is emphasized by the further direction that he or she shall "authorize the cancellation of the previous registration." In other words, only one legal form of registration is to be permitted to any voter whose name is changed, and it is to be in the new name. Since the right to register and vote is not an inherent right but a conditional privilege which may be exercised only upon compliance with the law, it seems clear to us that section 6–54 prescribes how that conditional privilege may be exercised by directing a single course of action and implying a prohibition of the exercise of the privilege in any other way.

Petitioner emphasizes two authorities, one from Michigan and the other from Pennsylvania, which she characterizes as squarely in point as sustaining her right to continue to be registered under her

maiden name. The Michigan citation is an attorney general's opinion construing the Permanent Registration Act of that state and appears in the Biennial Report of the Attorney General, Michigan, 1922–23, page 138. In that opinion he states that a woman would not by marriage lose the rights she had secured by reason of registration under her maiden name, if her qualifications as an elector in the place where registered, remained the same after marriage. Our Supreme Court held in *Peoples Gas Light & Coke Co. v. Ames,* 359 Ill. 152, that the opinion of the attorney general of another State is a circumstance that is entitled to little weight in arriving at the intention of our legislature. Moreover, it appears from petitioner's brief that the registration laws of Michigan did not contain any imperative provisions similar to those of section 6–54, and the attorney general was merely construing a provision that stated "any person not already registered who possesses the constitutional qualifications of an elector . . . may make application for registration"; and he was of the opinion that under that section a woman qualified to vote, who was in fact registered under her maiden name, was not to be deemed a person "not already registered." It does not appear from the attorney general's opinion or in any discussion contained in petitioner's brief that the Michigan Registration Law contains any provision requiring a registered woman whose name was changed by marriage to register anew under her marital name. The Illinois statute expressly so provides.

The decision cited and relied upon by petitioner is *Egerter's Appeal,* 32 Pa. Dist. & Co. Reports 138. In that case petitioner had been married and divorced. After her divorce she chose to resume the use of her maiden name, and having changed her name she demanded the right to have the registration lists corrected so as to cancel the use of her former marital

name, and permit her to be registered under the name she had resumed. Our Supreme Court held in *Reinken v. Reinken,* 351 Ill. 409, that a divorced woman could, at her option, either continue to use her marital name, including the use of her husband's surname, or could voluntarily change her name after divorce by resuming the use of her maiden name. The Pennsylvania court merely held that a divorced woman had the same optional right with respect to the choice of her former name, and the petitioner in that case having changed her name was entitled to demand of the election officials that they make a corresponding change in her designation on the registration lists. In other words, the petitioner in the Pennsylvania case was demanding, and was permitted by the court to demand, the right to do that which plaintiff in this case has refused to do even though commanded by the imperative language of section 6–54, reregister after changing her name both in fact and in law by her marriage.

Although petitioner places considerable reliance upon the additional stipulated facts showing that she had for some years practiced her profession under the name of Antonia E. Rago, that she had become commonly and widely known in the neighborhood as an attorney at law under that name as evidenced by a "bronze plaque or professional sign, about 18 inches square, fastened on the front house wall of her home" in Chicago, that she had under her maiden name taken an active part in the political activities of the neighborhood, had been admitted to practice in various courts and had certificates issued to her in that name, and that she would suffer substantial damage in respect to her professional reputation if she were not permitted to vote under her maiden name, in the view we take all these facts are immaterial and irrelevant to any of the issues in this cause and have no bearing whatever upon the duty of the plaintiff to register anew in accordance with the statute in order to pre-

serve her right to vote as a registered and qualified elector in this State. So far as her professional pursuits are concerned, she is of course at liberty to use any name that she chooses. Since we hold that her name was changed by marriage, the plain provisions of section 6–54 are mandatory and disqualify her from continuing to remain registered and to vote under her maiden name; and it would follow of course that it was the duty of defendants, upon being informed as to her marriage and change of name, to cause petitioner's registration to be cancelled and removed from precinct registration lists.

In view of these conclusions we think the court erred in commanding defendants to restore plaintiff's registration under her maiden name of Antonia E. Rago and thereafter to permit her to be registered and to vote under that name for succeeding elections, notwithstanding her marriage and without requiring her to register anew under her marital name as provided by law. The judgment order of the superior court is therefore reversed.

*Judgment order reversed.*

Scanlan and Sullivan, JJ., concur.