THE F. & M. SCHAEFER BREWING CO. *v.*
COMPTROLLER OF THE TREASURY

[No. 378, September Term, 1968.]

*Decided October 10, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*William A. Grimes* for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This is another skirmish in the continuing battle between taxpayers and taxing authorities. The questions here presented are (1) whether Code (1965 Repl. Vol.) Art. 81, § 333 requires a certificate of purchase for resale in order to qualify for the exclusion from tax afforded by Sec. 324 (f) (4) of Art. 81 for electricity used in manufacturing, and (2) whether the Comptroller's Rule 24 requiring a purchaser of electricity to first obtain an exemption certificate in order to qualify for the exclusion is within the Comptroller's rule-making power conferred by Sec. 365 (a) of Art. 81.

Appellant, The F. & M. Schaefer Brewing Company

(Schaefer), bought electricity in the years 1964, 1965 and 1966 on which it paid sales taxes totaling $10,686.91. Schaefer sought a refund of the tax paid. The refund was denied by the Comptroller, an action affirmed by the Maryland Tax Court and the Baltimore City Court. We shall answer the questions in the negative and reverse the action of the Baltimore City Court.

The facts are not in dispute. Of the electricity so purchased, 94.9% was used for manufacturing and processing beer at Schaefer's Baltimore plant. The remaining 5.1% was used for nonmanufacturing purposes. During this period Schaefer did not hold an exemption certificate issued by the Comptroller pursuant to the Comptroller's Rule 24 (d), nor did its utility hold a resale certificate from Schaefer.

Sec. 325, Art. 81 imposes a tax "[f]or the privilege of selling certain tangible personal property at retail * * * and for the privilege of dispensing certain selected services defined as sales at retail by § 324 (f)" of the Retail Sales Tax subtitle. Sec. 324 (f) during the years here in question, provided in pertinent part:

> "(f) *'Retail sale'* and *'sale at retail'* shall mean the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this subtitle. Said term shall mean all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be received by him, or to use or incorporate the property so transferred, as a material or part, of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining. For the purpose of the tax imposed by this subtitle, the term 'sale at retail' shall include but shall not be limited to the following:
> * * *

"(4) The sale of * * * electricity, * * *
when made to any purchaser for purposes other
than resale or for use in manufacturing, assem-
bling, processing or refining."

The Comptroller concedes, correctly, that, under this
provision of the statute, electricity purchased "for use in
manufacturing" is not taxable. See the comment, for this
Court, of Judge (now Chief Judge) Hammond on this
subject in *Comptroller v. A. Cyanamid Co.*, 240 Md. 491,
505, 214 A. 2d 596 (1965).

The Comptroller claims that there is a presumption
under Sec. 333 of Art. 81 that a sale is taxable and that
this presumption may be rebutted only by obtaining the
resale certificate there provided. Sec. 333 reads as fol-
lows:

"It shall be presumed that all sales of tangi-
ble personal property and services mentioned
in this subtitle are subject to tax until the con-
trary is established, and the burden of proving
that a sale is not taxable hereunder shall be up-
on the vendor or the purchaser as the case may
be. Unless the vendor shall have taken from the
purchaser a certificate signed by and bearing
the name and address of the purchaser and the
number of his registration certificate to the ef-
fect that the property or service was purchased
for resale, the sale shall be deemed a taxable
sale at retail. The certificate herein required
shall be in such form as the Comptroller shall,
by regulation, prescribe and in case no certif-
icate is furnished or obtained prior to the time
the same is consummated, the tax shall apply as
if the sale were made at retail."

The Comptroller points as authority for his position
to the decision of this Court in *Comptroller v. Atlas In-
dustries*, 234 Md. 77, 198 A. 2d 86 (1964), where Judge
(later Chief Judge) Prescott said for this Court:

"There can be little doubt, we think, that the

statutes [§§ 324 (f), 333 and 333B] should be construed together. It will be noted that although Section 324 (f) excludes sales for resale from the definition of 'retail sale,' Sections 333 and 333B set forth what a vendor must do to set on foot such an exclusion, and relieve him from the obligation imposed by Section 325 of collecting a sales tax from the purchaser. These latter sections provide that *all* receipts for the sale of tangible personal property shall be presumed to be subject to tax, with the burden of establishing the contrary on the vendor or purchaser, and unless the vendor shall have taken from the purchaser a certificate signed by the purchaser and bearing the number of his registration certificate to the effect that the property was purchased for resale, 'the sale shall be deemed a taxable sale,' and in case no certificate is furnished or obtained prior to the time the sale is consummated, 'the tax shall apply as if the sale were made at retail.' It is difficult to see how the Legislature could have used plainer or more precise language to express an intention that the tax applies, unless certificates of resale are obtained. It seems apparent that Section 333 was designed as an easy method of establishing that a purchase has been made for the purpose of resale, but, at the same time, when resale certificates are not obtained to avoid possibly protracted and tedious litigation in attempts to establish that purchases have, in fact, been made for the purpose of resale." (emphasis in original) *Id.* at 82-83.

*Atlas* must be read in its context. Marvil Package Company, a division of Atlas General Industries, was in the business of manufacturing baskets and crates used in the packaging of vegetables, chickens, seafood and other foodstuffs. The assessment in question there re-

lated to taxes claimed to be due on sales to farmers and food packers where no resale certificate had been furnished. That case was in no way concerned with a sale similar to that here involved, nor the proof in such situation.

In *Thomas v. Police Commissioner*, 211 Md. 357, 127 A. 2d 625 (1956), this Court said:

> "It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. *Bickel v. Nice*, 173 Md. 1, 6; *Baltimore v. Deegan*, 163 Md. 234, 238; *Pittman v. Housing Authority*, 180 Md. 457, 463; *Maguire v. State*, 192 Md. 615, 623; *Frazier v. Warfield*, 13 Md. 279, 301. A corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory. This was stated negatively in *Pressman v. State Tax Commission*, 204 Md. 78, where it was noted that words in a statute may be rejected as surplusage if they are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it." *Id.* at 361.

It is the Comptroller's position that the provision of Sec. 333 requiring the vendor to take from the purchaser a certificate of resale prior to the time the sale was consummated was intended by the General Assembly to embrace not only sales where the property or service was purchased for resale but also sales where the property or service was purchased for manufacturing. This position becomes untenable when one examines Sec. 333A which provides:

> "No vendor shall accept a resale certificate

> for property which he knows or should know is not for resale."

In providing electrical service in an amount sufficient for payment of sales tax averaging more than $3500.00 per year, as in this case, an electric utility would be obliged to know something of the operation involved and the demands to be made on it. Likewise, a utility selling for resale must have some knowledge of demand in order to arrange its own generating capacity. A wholesaler of some commodities might or might not know whether a purchaser intended to resell, but the utility here certainly had knowledge from the nature of the demand that no resale was involved. Accordingly, it would have been prohibited under § 333A from accepting a resale certificate.

In a sale made by an electric utility to a manufacturing plant, it is possible to readily ascertain what portion of electricity is used for manufacturing and nonmanufacturing purposes. Those skilled in the field know precisely how many kilowatt hours of electricity will be consumed by a motor of a given capacity operating for a given number of hours. In the matter of sales such as that made by Marvil Package Company in *Atlas, supra,* in the absence of a device such as the resale certificate provided for in the statute, the task of proof would be a tremendous one, as recognized by Judge Prescott in the portion of the opinion above quoted. Accordingly, the General Assembly provided a method for proof in those cases, while prescribing no method relative to sales of electricity "for use in manufacturing".

The certificate provision was intended to be applicable to sales made for the purpose of resale and to no other sales. There is no other way that the parts of the statute may be "reconciled and harmonized".

Under Sec. 365 (a) of Art. 81 the Comptroller is authorized "[t]o make, adopt and amend such rules and regulations as he shall deem necessary to carry out the provisions of [the retail sales tax] subtitle and to define any terms used [therein]". Pursuant to that authority

the Comptroller has promulgated his Rule 24. It deals with the sale of gas, electricity, steam, oil and coal. Significantly, it states, "Sales for resale include only such sales made to persons licensed under section 360 (Registration)." Section 360 provides for licensing those persons in the business of making retail sales who are to collect the tax. The rule further provides that electricity consumed in manufacturing for operating machinery, lighting and heating a factory or shop is not subject to tax. Subparagraph (d) states:

"Exemption Certificate: Every purchaser purchasing natural or artificial gas, electricity or steam for any purpose claimed to be exempt from or not subject to the tax, in order to qualify for the exemption, must present evidence satisfactory to the Comptroller that the sale is exempt under the foregoing rules and *must obtain from the Comptroller an Exemption Certificate to be presented to his Vendor*." (emphasis added)

The Comptroller points to his construction of Sec. 333 as requiring a certificate of resale in this instance, and to the exemption certificate provisions of his rule, and then relies upon the doctrine that the construction placed upon a statute by administrative officials soon after its enactment is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons, citing *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A. 2d 754 (1946), and *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A. 2d 473 (1953), an elementary proposition of law conceded by Schaefer. In *Comptroller v. A. Cyanamid Co., supra,* however, the comment is made:

"There can be no challenge to the proposition that the Comptroller cannot by rule or otherwise make taxable that which the Legislature has excluded or exempted from taxation and cannot

exclude or exempt that which the law says is taxable." *Id.* at 505.

Judge Delaplaine stated the proposition in another way for the Court in *Rogan v. B. & O. R. R. Co.*, 188 Md. 44, 52 A. 2d 261 (1947), when he said:

> "Where the language of a statute is susceptible of two reasonable constructions, an administrative practice which has been followed by officials of the State for a long period of time has a very persuasive influence on the judicial construction of the statute. But where the language is plain and unambiguous, the judicial construction cannot be controlled by extraneous considerations. No custom, however venerable, can nullify the plain meaning and purpose of a statute." *Id.* at 58.

In *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 107 A. 2d 93 (1954), this Court said:

> "There can be no question that an administrative official charged with the enforcement of a sales tax statute has no authority to promulgate a rule for the computation of a tax so as to impose the tax upon a transaction which is not taxable under the provisions of the statute. No tax can be lawfully imposed except upon express authority vested in the official who seeks to impose it. In interpreting a tax statute, the court must not extend its provisions by implication beyond the clear import of the language employed. Such a statute, in case of doubt as to its scope, should be construed most strongly in favor of the citizen and against the State." (citing authorities) *Id.* at 234.

The Comptroller's rule as here sought to be applied is an invalid attempt to render taxable that which the General Assembly has precisely defined as not taxable.

Accordingly, Schaefer is entitled to its refund and the action of the Baltimore City Court must be reversed.

> *Order reversed and case remanded for passage of an order reversing the order of the Maryland Tax Court; costs to be paid by appellee.*