STUART *v.* BOARD OF SUPERVISORS OF ELEC-
TIONS FOR HOWARD COUNTY ET AL.

[No. 105, September Term, 1972.]

*Decided October 9, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Arold H. Ripperger,* with whom were *Ann Llewellyn McKenzie, Kathryn Scates Levedahl* and *Mary Ellen Brooke* on the brief, for appellant.

*Amicus Curiae* brief filed by The Women's Law Center, *Emma A. Clarke* on the brief.

*Amicus Curiae* brief filed by American Civil Liberties Union, *Ruth Bader Ginsburg, Melvin L. Wulf, Brenda Feigen Fasteau* and *Elsbeth L. Bothe* on the brief.

*Amicus Curiae* brief filed by Lorraine Alice Underwood and Dennis Lichti Albrecht, *Selma W. Samols* on the brief.

*E. Stephen Derby, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Hogg* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court. SMITH, J., dissents and filed a dissenting opinion at page 451 *infra.*

Mary Emily Stuart and Samuel H. Austell, Jr., were married in Virginia on November 13, 1971 and, shortly thereafter, took up residence in Columbia, Howard County, Maryland. In accordance with the couple's oral antenuptial agreement, Stuart continued, after the marriage, to use and be exclusively known by her birth given ("maiden") name and not by the legal surname of her husband.

On March 2, 1972, Stuart undertook to register to vote in  Howard County in her birth given name. After disclosing to the registrar that she was married to Austell but had consistently and nonfraudulently used her maiden name, she was registered to vote in the name of Mary Emily Stuart.

On March 16, 1972 the Board of Supervisors of Elections for Howard County notified Stuart by letter that since under Maryland law "a woman's legal surname becomes that of her husband upon marriage," she was required by Maryland Code, Article 33, § 3-18 (c) to complete a "Request for Change of Name" form or her registration would be cancelled. Stuart did not complete the form and her registration was cancelled on April 4, 1972.

Stuart promptly challenged the Board's action by two petitions filed in the Circuit Court for Howard County, the first entitled "Petition to correct [the voter] registry," and the second "Petition to restore name to registry of voters in Howard County." In each petition Stuart maintained that she was properly registered to vote in her birth given name, that being her true and correct name; that under the English common law, in force in Maryland, a wife could assume the husband's name if she desired, or retain her own name, or be known by any other name she wished, so long as the name she used was not retained for a fraudulent purpose; and that since the only name she ever used was Mary Emily Stuart the Board had no right to cancel her voter registration listed in that name.

The petitions were consolidated and an evidentiary hearing was held before Judge T. Hunt Mayfield on May 8, 1972. Evidence was adduced showing that the oral antenuptial agreement between Stuart and Austell that she would retain her maiden name was a matter of great importance to both parties. Stuart testified that her marriage to Austell was "based on the idea that we're both equal individuals and our names symbolize that." There was evidence that prior to the marriage lawyers were

consulted on the parties' behalf who indicated that Stuart had the right to retain her own name after the marriage. Stuart testified, and Austell corroborated her testimony, that she would not have gotten married "if * * * [the marriage] would have jeopardized my name." She testified that after the marriage she continued to use her own name on charge accounts, on her driver's license and Social Security registration and in "every legal document I've ever had." "Everybody" she said, "knows me by the name Mary Stuart."

There was evidence showing that the practice of the Board requiring a married woman to use the surname of her husband dated back to 1936; that the practice was a uniform one throughout the State and was adopted to provide some trail of identification to prevent voter fraud; that if a married woman could register under different names the identification trail would be lost; and that the only exception permitted to the requirement that married women register under their husbands' surnames was if the name was changed by court order.

By opinion filed May 10, 1972, Judge Mayfield concluded "that a person may adopt and use any name chosen in the absence of fraudulent intent or purpose"; that the use by Stuart of her maiden name was without fraudulent intent or purpose; that it is the law of Maryland that "the use by the wife of the husband's surname following marriage, while the same may have been initially based upon custom and usage, is now based on the common law of England, which law has been duly adopted as the law of this State"; that under the provisions of the Code, Article 33, § 3-18 (a) (3) clerks of courts, as therein designated, are required to notify Boards of Supervisors of Elections of the "present names" of females over the age of eighteen years residing within the State "whose names have been changed by marriage"; that by subsection (c) of § 3-18, the Boards, upon being advised of a "change of name by marriage," are required to give notification "that such * * * change of name by marriage * * * has been reported to the board, and shall require

the voter to show cause within two weeks \* \* \* why his registration should not be cancelled"; that § 3-18 appeared "to be in conformity with the common law," as espoused in such cases as *People ex rel. Rago v. Lipsky,* 63 N.E.2d 642 (Ill. 1945) and *Forbush v. Wallace,* 341 F. Supp. 217 (M.D. Ala. 1971), *aff'd per curiam* 405 U. S. 970 (1972) ; that the "statutory requirements [of § 3-18] are in accordance with the law which says that upon marriage the wife takes the surname of her husband"; that the provisions of § 3-18 do not deprive Stuart of her right to use her maiden name, nor of her right to vote, but require only that she "register to vote under her 'legal' name, \* \* \* based upon the broad general principle of the necessity for proper record keeping and the proper and most expedient way of identifying the person who desires to vote." [1]

From the court's order denying her petitions to correct the voter registry and to restore her name thereto, Stuart has appealed. She claims on appeal, as she did below, that a woman's surname upon marriage does not become that of her husband by operation of the common law in force in Maryland and that nothing in the provisions of § 3-18 (a)(3) and (c) mandates a contrary result.

---

1. In pertinent part, § 3-18 (a)(3) and (c) provides:

"(a) *Reports to be made by certain public agencies.*— Reports to the board shall be made by the several officials in Baltimore City at least once each month, and in the several counties, by the last days of January and July in each year, as follows:

\* \* \*

"(3) The clerk of the Court of Common Pleas in Baltimore City and the clerk of the circuit court for each county shall file with said respective boards the former and present names of all female residents of said city or county, as the case may be, over the age of eighteen years, whose names have been changed by marriage since the date of the last such report.

\* \* \*

"(c) *Notification to show cause before cancellation.*— Whenever the \* \* \* change of name by marriage \* \* \* is reported as above provided, the board shall cause to be mailed to the address of such voter \* \* \* a notification that such \* \* \* change of name by marriage \* \* \* has been reported to the board, and shall require the voter to show cause within two weeks \* \* \* why his registration should not be cancelled. \* \* \*"

What constitutes the correct legal name of a married woman under common law principles is a question which has occasioned a sharp split of authorities, crystallized in the conflicting cases of *State ex rel. Krupa v. Green,* 177 N.E.2d 616 (Ohio 1961), relied upon by Stuart, and *People ex rel. Rago v. Lipsky, supra,* adopted by the lower court as its principal authority for denying the petitions. *Green* approved the voter registration of a married woman in her birth given name which she had openly, notoriously and exclusively used subsequent to her marriage, and held that she could use that name as a candidate for public office. The court held:

> "It is only *by custom,* in English speaking countries, that a woman, upon marriage, adopts the surname of her husband in place of the surname of her father." *Id.* at 619 (Emphasis in original.)

*Lipsky* refused to allow a married woman to remain registered to vote under her birth given name on the basis of

> "* * * the long-established custom, policy and rule of the common law among English-speaking peoples whereby a woman's name is changed by marriage and her husband's surname becomes *as a matter of law* her surname." *Id.* at 645 (Emphasis supplied.)

Cases tending to support the rationale of *Green* are *Lane v. Duchac,* 41 N. W. 962, 965 (Wis. 1889); *Rice v. State,* 38 S. W. 801, 802 (Tex. 1897); *Succession of Kneipp,* 134 So. 376, 378 (La. 1931); *State ex rel. Bucher v. Brower,* 21 Ohio Op. 208 (Ohio 1941); *Wilty v. Jefferson Parish,* 157 So. 2d 718, 727 (La. 1963) (Sanders, J., concurring). Cases tending to support the *Lipsky* theory are *Chapman v. Phoenix National Bank,* 85 N. Y. 437, 449 (N.Y. 1881); *In Re Kayaloff,* 9 F. Supp. 176 (S.D. N.Y. 1934); *Freeman v. Hawkins,* 14 S. W. 364, 365 (Tex. 1890); *Bacon v. Boston Elevated Ry. Co.,* 152 N. E. 35, 36 (Mass. 1926); *Wilty v. Jefferson Parish, supra,*

446

at 723-24 (Hamlin, J.) ; *Forbush v. Wallace, supra,* at 221-22.[2]

We think the lower court was wrong in concluding that the principles enunciated in *Lipsky* represent the law of Maryland. We have heretofore unequivocally recognized the common law right of any person, absent a statute to the contrary, to "adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued." *Romans v. State,* 178 Md. 588, 597. In the context of the name used in an automobile liability insurance contract, we approved the consistent nonfraudulent use by a married woman of a surname other than that of her lawful husband in *Erie Insurance Exchange v. Lane,* 246 Md. 55. Citing with approval *Everett v. Standard Acc. Ins. Co.,* 187 P. 996 (Cal. App. 1919), we summarized its holding as follows:

> "The court * * * held that because the insured had been known as Everett for twenty-two years before the policy was issued, a representation that his name was Everett was not a misrepresentation, although his name before had been Cowie, since a man may lawfully change his name without resorting to legal proceedings and by general usage or habit acquire another." *Erie* at 62-63.

If a married woman may lawfully adopt an assumed name (which, in *Erie,* was neither her birth given name nor the name of her lawful husband) without legal proceedings, then we think Maryland law manifestly permits a married woman to retain her birth given name by the

---

**2.** The three-judge District Court in *Forbush* upheld the constitutionality of the Alabama regulation, based on Alabama case law, that a married woman's legal surname is that of her husband, requiring that she use her husband's surname in obtaining a driver's license. The Supreme Court's affirmance was without opinion and since it was based upon Alabama common law, differing from that of Maryland, it is not constitutional authority binding upon us in applying the common law rule in force in Maryland.

same procedure of consistent, nonfraudulent use following her marriage. In so concluding, we note that there is no statutory requirement in the Code, in either Article 62 (Marriages) or Article 45 (Husband and Wife), that a married woman adopt her husband's surname.[3] Consistent with the common law principle referred to in the Maryland cases, we hold that a married woman's surname does not become that of her husband where, as here, she evidences a clear intent to consistently and nonfraudulently use her birth given name subsequent to her marriage. Thus, while under *Romans,* a married woman may choose to adopt the surname of her husband —this being the long-standing custom and tradition which has resulted in the vast majority of married women adopting their husbands' surnames as their own —the mere fact of the marriage does not, as a matter of law, operate to establish the custom and tradition of the majority as a rule of law binding upon all.

From a study of the English authorities cited to us by the parties and amici curiae, we believe the rule we enunciate today is founded upon the English common law incorporated into the laws of Maryland by Article 5 of the Maryland Declaration of Rights. The question of English common law was considered by the Ohio Court of Appeals in *State ex rel. Krupa v. Green, supra,* at 619:[4]

> "In England, from which came our customs with respect to names, a woman is permitted to retain her maiden surname upon marriage if she so desires.
>
> "M. Turner-Samuels, in his book on 'The Law of Married Women' at page 345, states:
>
> 'In England, custom has long since or-

---

3. Compare Hawaii Rev. Stat., Title 31, § 574-1 (1968): "Every married woman shall adopt her husband's name as a family name." Hawaii appears to be the only state with a statutory provision determinative of the issue.

4. *People ex rel. Rago v. Lipsky, supra,* contains no reference to English law.

dained that a married woman takes her husband's name. This practice is not invariable; not compellable by law. * * * A wife may continue to use her maiden, married, or any other name she wishes to be known by. * * *'

He cites the following cases as authority for his statement: Fendall v. Goldsmid (1877) 2 P.D. 263; Dancer v. Dancer (1948) 2 All E.R. 731; Chipchase v. Chipchase (1939) P. 391; Chipchase v. Chipchase (1942) P. 37, distinguished; Sullivan v. Sullivan (1818) 2 *Hag.Con.* 238, 161 E.R. 728, 27 Digest 49, 279; Wakefield v. Mackay (1807) 1 *Hag.Con.* 394, 1 Phillim. 134, n."

Other English text writers have expressed a similar view of English law:

"In England (followed by the United States of America) practice has crept in, though apparently comparatively recently, for a woman upon marriage to merge her identity in that of her husband, and to substitute his name for her father's acquiring the new surname by repute." C. Ewen, *A History of Surnames of the British Isles* 391 (London 1931)

To the same effect see 19 Halsbury's Laws of England 829 (3d Ed. 1957):

"1350. Assumption by wife of husband's name. When a woman on her marriage assumes, as she usually does in England, the surname of her husband in substitution for her father's name, it may be said that she acquires a new name by repute. The change of name is in fact, rather than in law, a consequence of the marriage. * * *" (Footnotes omitted.)

Under the common law of Maryland, as derived from the common law of England, Mary Emily Stuart's sur-

name thus has not been changed by operation of law to that of Austell solely by reason of her marriage to him. On the contrary, because of her exclusive, consistent, nonfraudulent use of her maiden name, she is entitled to use the name Mary Emily Stuart unless there is a statute to the contrary. *Romans v. State, supra.* We do not think that the provisions of Article 33, § 3-18 (a) (3) and (c), heretofore set forth, require that a married woman register to vote in the surname of her husband unless her name has been changed by legal proceedings under Maryland Rules BH70—BH75, and Article 16, § 123 of the Annotated Code of Maryland, as claimed by the Board. We are unable to attribute to that Section, even with the aid of a long-standing and uniform administrative practice, such an effect in derogation of the common law. See *MacBride v. Gulbro,* 247 Md. 727; *Gleaton v. State,* 235 Md. 271; *Mayor and City Council of Baltimore v. Baltimore Gas and Electric Company,* 232 Md. 123.[5]

Nothing in the language of § 3-18 (a) (3) or (c) purports to compel *all* married women to register to vote in their husbands' surname. Since Mary Emily Stuart did not undergo a "change of name by marriage," this Section merely requires her to show cause to the Board that she consistently and nonfraudulently used her birth given name rather than her husband's surname following marriage. Although no show cause hearing was held

---

5. The first election law dealing with the name of married women was enacted as part of the permanent general registration of voters in Baltimore City. It provided for notification to the Board by the Clerk in Baltimore City similar to the present § 3-18 (a) (3) and further provided that "Whenever, after an original registration, a person shall change his or her name, such person shall be required to re-register; * * *." Laws of 1937, ch. 77, § 29-0.

In 1945, Article 33 was repealed and a new Article 33 enacted. The notification provision was extended statewide, but without express provision for cancellation and re-registration. Laws of 1945, ch. 934, § 28 (c).

In 1959 the provision was added that in the event of change of name by marriage, the voter would be given an opportunity to show cause prior to cancellation. Laws of 1959, ch. 287 § 43 (g).

Minor changes, not here relevant, were made by Laws of 1967, ch. 392 and Laws of 1972, ch. 10.

in this case because, as found by the lower court, Stuart had difficulty in contacting the Chairman of the Board, two things are abundantly clear on the record before us: (1) that a show cause hearing, had one been held prior to the critical date specified by the Board, would not have resulted in the registration of Mary Emily Stuart in her maiden name, in light of the uniform practice of the Board, supported by an opinion of the Attorney General of Maryland dated April 7, 1971, and the statements of counsel for the Board at oral argument of the appeal; and (2) that Mary Stuart has amply demonstrated sufficient cause that her registration not be cancelled by proof adduced at the trial, and accepted by the court, that she has consistently and openly, with no intent to defraud, used the name Mary Emily Stuart as her sole and exclusive name after her marriage to Samuel Austell. In view of the impending closing of the voter registration books prior to the November 1972 election, we shall direct that the court below promptly order the Board to restore the name of Mary Emily Stuart to the registry of voters in Howard County. Of course, in so doing, the Board may make whatever cross-reference notation to the fact of Stuart's marriage to Austell that it thinks administratively feasible to meet the avowed needs of voter identification and prevention of dual registrations. See *State ex rel. Krupa v. Green, supra,* at 618.

In light of our disposition of the common law issue, we find it unnecessary to reach the constitutional issues raised by the appeal.

> *Order dismissing petitions vacated; case remanded for the passage of an order in accordance with this opinion; costs to be paid by appellees. Mandate to issue forthwith.*

*Smith, J., dissenting:*

I would affirm.

I do not see a constitutional issue in this case other than that of judicial legislation. The issue is not under what name one might prefer to permit a woman to register to vote, but what the General Assembly meant by "name" insofar as a married woman is concerned in its enactment of the laws relative to registration.

We start out with two bases, Article 8 of the Maryland Declaration of Rights providing "[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other," and the oft expressed doctrine that the construction placed upon a statute by administrative officials soon after its enactment is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons. *Williams v. Loyola College,* 257 Md. 316, 329, 263 A. 2d 5 (1970) ; *F. & M. Schaefer v. Comptroller,* 255 Md. 211, 218, 257 A. 2d 416 (1969) ; *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A. 2d 473 (1953) ; and *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A. 2d 754 (1946). When the General Assembly revised the election laws by the enactment of Chapter 392 of the Acts of 1967 it eliminated from the statute a specific provision relative to name. However, there is included a form with "Last Name," "First Name" and "Middle Name or Initial" appearing on it. Code (1971 Repl. Vol.) Art. 33, § 3-13 (a) provides for prospective voters "to answer in the presence of the registrars all questions required on the registration forms." The provision in Code (1957) Art. 33, § 23 (c) for entering "[t]he name and age of every applicant" is but little different from the requirement of Code (1939) Art. 33, § 19 that "[u]nder the column 'Name' " should be entered "the name of the applicant, writing the surname first, and full given or Christian name after," which came into the Maryland law under § 15 of Chapter 22 of the Acts of 1882, ap-

parently our first registration law, which became Code (1888) Art. 33, § 14.

Prior to the adoption of the 19th Amendment to the Constitution of the United States women were not permitted to vote in Maryland, *Leser v. Board of Registry*, 139 Md. 46, 114 A. 840 (1921), the provisions of Article 1, § 1 of the Constitution of Maryland limiting suffrage to males not having been eliminated until the adoption of a constitutional amendment by Maryland voters in 1956. It would seem that the General Assembly took special cognizance of women and their right to vote when it enacted Chapter 299 of the Acts of 1924, which became Code (1924) Art. 33, § 19, providing that "[a] female applicant for registration as a voter [should] not be required to state her exact age, but it [should] be sufficient for said applicant to state, in answer to any and all questions relating to her age, that she [would] be at least 21 years of age on the regular election day next succeeding the day of registration," a provision which remained in Article 33 until it was revised by Chapter 934 of the Acts of 1945. It chose to remain silent upon the subject of name, however, from which one might infer tacit approval of the prevailing practice.

In 1921, prior to the day of the so-called "permanent registration" now in effect, when a person once registered in a given election district or precinct could continue to vote there notwithstanding the fact that he might move to some other address in that election district or precinct, Attorney General Alexander Armstrong was asked whether a woman who had registered and voted the preceding year and had since married was entitled to vote at a coming or subsequent election under the name which she bore at the time of registration. In 6 *Op. Att'y Gen.* 188 (1921), he replied in the affirmative, saying that the only ground upon which the right to vote might be challenged was that the person offering to vote was not a registered voter of the district or precinct in which application was made. He further said:

"The case of a woman whose name has been

changed by marriage is analogous to that of a person who has, since registration, changed his or her residence to some other residence within the district or precinct. In each of these instances no change of the registration books is necessary." *Id.* at 189.

It is interesting to note that in 1931 the Attorney General was asked to advise "as to the proper name to be used by a Catholic Sister or a Brother in a religious order when registering for voting purposes." In 16 *Op. Att'y Gen.* 144 (1931), he replied:

"The law requires the giving of the correct legal name, and until a person's name has been changed in the manner provided by law, this name should be given when applying for registration purposes." *Id.* at 144.

2 Bishop, *Marriage, Divorce and Separation* § 1622 (1891), states:

"The rule of law and custom is familiar, that marriage confers on the woman the husband's surname."

Like statements are to be found in 57 Am. Jur. 2d *Name* § 9 (1971), relied upon by the trial judge, and 65 C.J.S. *Name* § 3c (1966). *See also* on the subject Annot., 35 A.L.R. 413 (1925).

*In re Kayaloff,* 9 F. Supp. 176 (S.D. N.Y. 1934), is interesting in this regard. There a married woman was seeking naturalization. She was a musician "known professionally by her maiden name." She feared that she might possibly suffer financial loss if her naturalization certificate showed her surname to be that of her husband. She saw another problem in that a discrepancy would exist between her musical union card and her naturalization certificate. The court, after stating that "[t]he union card should conform to the naturalization certificate rather than that the latter should yield to the union card," said:

> "Under the law of New York, as pronounced in *Chapman v. Phoenix National Bank*, 85 N.Y. 437, a woman, at her marriage, takes the surname of her husband. 'That,' it was there said, 'becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. Her maiden surname is absolutely lost, and she ceases to be known thereby.' " *Id.* at 176.

The exact point here involved was before the court in *People v. Lipsky*, 327 Ill. App. 63, 63 N.E.2d 642 (1945). Antonia E. Rago, admitted to the bar of Illinois in 1938, married MacFarland in 1944. She was admitted to practice under the name of Rago in the federal courts in Chicago and before the Supreme Court of the United States, in addition to the Illinois courts. She practiced under the name of Rago. She claimed that her husband expressly approved of her plans to continue her practice of law and her other business affairs under the name of Rago. She sought to register under that name and challenged a provision of the Illinois law which provided that any registered voter who changed her name by marriage should "be required to register anew and authorize the cancellation of the previous registration." In holding that she was obliged to register under her married name, the court said:

> "Notwithstanding petitioner's contention to the contrary, it is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and takes the husband's surname, with which is used her own given name." *Id.* at 67.

The courts in *Kayaloff* and in *Lipsky*, as have many of the authorities, relied upon *Chapman v. Phoenix Nat'l Bank of City of New York*, 85 N.Y. 437 (1881). There Verina S. Moore had married a man by the name of Chap-

man. The question actually before the court was the propriety of notice given after her marriage to an individual described as "Ver. S. Moore." The court there said:

> "Her name was then, and for more than three years had been, Verina S. Chapman. For several centuries, by the common law among all English speaking people, a woman, upon her marriage, takes her husband's surname. That becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. Her maiden surname is absolutely lost, and she ceases to be known thereby." *Id.* at 449.

I am not impressed by the comment, citing *Romans v. State,* 178 Md. 588, 597, 16 A. 2d 642 (1940), that a person has a common law right, absent a statute to the contrary, to "adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued." Rather, the question is, as I see it, what the General Assembly meant in the registration laws when "name" was mentioned.

It is conceded by all concerned that the uniform practice in Maryland has been for a married woman to register under the surname of her husband. This is in accordance with what I understand to be the authorities on the subject of name. It certainly is in accordance with custom. Therefore, I believe that to permit a married woman to register under a surname other than that of her husband she must either go through the process of having her name changed or the General Assembly must so provide. A holding to the contrary is in my humble opinion judicial legislation which is forbidden by the Maryland Declaration of Rights.