[No. 43907.    En Banc.    April 22, 1976.]

JANE DOE, *Respondent,* v. HARRY DUNNING, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *James A. Humphrey,* for appellants.

*Barbara A. Isenhour* of *Legal Services Center* (Seattle), for respondent.

BRACHTENBACH, J.—Plaintiff[1] seeks a certified copy of the record of birth, a conventional birth certificate, for her child who was born out of wedlock. With the concurrence of the child's father, the child was given the mother's surname. Named as defendants are those persons responsible for administrating the issuance of certificates of birth. In a declaratory judgment action, the trial court ordered the issuance of a conventional birth certificate to plaintiff. In so ordering, the trial court declared that the defendants are required to issue upon request conventional birth certificates to all applicants, without regard to the circumstances of their birth. We affirm.

---

[1]This action was filed in the mother's name, individually and on behalf of her child whose name was stated in the pleadings. To avoid revealing the name of either the mother or child, a substituted case title has been adopted.

The issuance of birth records in general is governed by RCW 43.20.090, the pertinent portion of which reads:

> The state registrar shall, upon request, furnish an applicant with a certified copy of the record of any birth . . . registered under the provision of law, or that portion of the record of any birth which shows the child's full name, sex, date of birth, and date of filing of the certificate . . . *Provided,* That a certified copy of the record of any birth may not disclose the fact of illegitimacy of birth, nor of information from which it can be ascertained . . .

The certificate of live birth, customarily, is filled out by the doctor and the hospital staff with the aid of the mother at the time of birth. This certificate is then filed with the appropriate registrar. There are two parts to this certificate. The first portion of the certificate contains, among other information, the name of the child, date, and place of birth, the name of the father and the maiden name of the mother. It is this portion of the certificate, which contains nonconfidential information, that constitutes the conventional birth certificate referred to in RCW 43.20.090. The second portion of the certificate is labeled "Confidential Information for Medical and Health Use Only." Included in this portion of the certificate is a designation of whether the child is legitimate. The information included in this confidential section of the birth certificate is not subject to the view of the public or for certification purposes except upon court order. RCW 70.58.200.

In addition to authorizing the issuance of a certified copy of the record of birth, RCW 43.20.090 also authorizes the issuance of a birth record certification card (commonly referred to as a birth registration card). This is a card the size of an ordinary credit card which evidences the name of the child, the date of birth, the child's gender, and place of birth. The principal difference between the information contained on this card and that contained on the conventional birth certificate is that no reference is made to the names of the father and mother.

This case arises because of the unwritten policy of the

registrar to not issue a conventional birth certificate for an illegitimate child who bears the mother's surname. In such situations, the registrar issues a birth registration card. If the child bears the surname of the father, however, a conventional birth certificate is issued regardless of whether the person is legitimate. A person of legitimate birth may obtain, upon request, either a conventional birth certificate, or a birth registration card, or both. The above policy concerning the issuance of conventional birth certificates and birth registration cards is an attempt by the registrar to comply with the above quoted proviso of RCW 43.20.090, *i.e.*, not to disclose the fact of illegitimacy nor information from which it can be ascertained.

The registrar's policy is premised upon the assumption that a conventional birth certificate which discloses the father's name but which shows the child to bear the mother's surname is indicative of a probability of illegitimacy. This conclusion is based upon the widespread custom of a child being given its father's surname. The plaintiff challenges this conclusion, contending that traditional name patterns are changing as more women insist that their surnames be given equal status with men's.

■ The purpose of the statutory proviso is clear—to avoid disclosure of illegitimacy or information from which it can be ascertained. The only question is whether the registrar's policy carries out that purpose.

We conclude that disclosure of the fact that a child bears the mother's surname is not necessarily a fact from which illegitimacy can be ascertained. As long as the State makes no affirmative statement about the status of the child's legitimacy, there will be no concrete evidence on the birth certificate from which to ascertain that the child was born out of wedlock.

While we have been furnished no statistics, it is common knowledge that in today's society more women are interested in retaining their surnames upon marriage and that they have a legal right to do so. *See* Spencer, *A Woman's Right to Her Name*, 21 U.C.L.A. L. Rev. 665 (1973);

Spitzer, *Wives, Babies, Names and the Common Law*, 27 Wash. St. Bar News 10, at 4 (Dec. 1973); Lamber, *A Married Woman's Surname: Is Custom Law?*, 1973 Wash. U. L.Q. 779.

Under well established principles of common law, a person is free to adopt and use, absent a statute to the contrary, any name that he or she sees fit so long as it is not done for any fraudulent purposes and does not infringe upon the rights of others. 57 Am. Jur. 2d *Name* §§ 1, 10 (1971); Attorney General Opinion, Jan. 30, 1928. This common-law right applies as well to the surnames of married women. While it may be that it is considered customary for a woman to take her husband's surname upon marriage, it is custom only and not a legal requirement. *Custer v. Bonadies*, 30 Conn. Supp. 385, 318 A.2d 639 (Super. Ct. 1974); *Stuart v. Board of Supervisors*, 266 Md. 440, 295 A.2d 223 (1972); *State ex rel. Krupa v. Green*, 114 Ohio App. 497, 177 N.E.2d 616 (1961); *Dunn v. Palermo*, 522 S.W.2d 679 (Tenn. 1975); *But cf. People ex rel. Rago v. Lipsky*, 327 Ill. App. 63, 63 N.E.2d 642 (1945).

Other states have statutorily recognized the right of a married woman to retain her own surname upon marriage. Under a 1975 statute, each married party in Hawaii is allowed to declare which surname each will use as a married person. It may be the person's own surname, the spouse's surname or a hyphenated combination of the two. Hawaii Rev. Stat. § 574-1. An earlier version of that statute required the wife to take the husband's surname. Should the necessary states ratify the federal Equal Rights Amendment, it is doubtful whether any state could compel a woman to change her legal surname upon marriage. *See* Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L.J. 871, 940-41 (1971).

As more women exercise their right to retain their own surname after marriage, the likelihood that children will be given a surname other than the paternal surname increases. There are generally no statutes requiring married parents

to give their child the father's surname; although customarily parents do, they have a choice and can freely exercise it. Lamber, *A Married Woman's Surname: Is Custom Law?*, *supra* at 804-05. One function of the "family" name is to identify those persons who live in an economic and social unit. This purpose is not served if the father's surname is given to a child who does not live with him. *See* Krause, *Illegitimacy: Law and Social Policy* 98 (1971). Property and inheritance are also factors which may lead to the use of the mother's surname. Historically, it was not uncommon for children to take the mother's surname where she owned the most property or had the largest estate. Reany, *Origins of English Surnames* 84, 85 (1967). Cultural heritage may also be a relevant consideration, for example, persons of Spanish ancestry often use both parents' surnames as the surname of the child. E. Smith, *The Story of Our Names* 134 (1970).

In summary, we know of no legal impediment which would prevent married parents from giving the child the mother's surname. However, under the policy in question, if the presumption upon which the policy is based is valid, a birth certificate issued to a legitimate child would in fact indicate illegitimacy simply because of the surname.

In view of at least past customs, it may be that some persons seeing such a birth certificate would suspect illegitimacy. Others might view it as an adoption of an emerging social trend. It certainly is not necessarily information from which illegitimacy can be ascertained because it does not necessarily indicate illegitimacy and that is what the statute prohibits.

On the other hand, a child who cannot produce a conventional birth certificate and has only a birth registration card is necessarily labeled as illegitimate, at least to those familiar with the policy involved.

The registrar's policy must additionally be questioned in light of another of defendants' procedures which allows an illegitimate child, with the parent's consent, to obtain a conventional birth certificate at age 14. If the record of

birth of a child bearing the mother's surname does reveal information from which illegitimacy can be ascertained, upon what basis can the defendants justify furnishing a conventional birth certificate to a 14-year-old child and not to the plaintiff? No such exception appears in the statute. *See* RCW 43.20.090.

RCW 43.20.090 does not say that certified copies of the official record of birth may be denied to children born out of wedlock. On the contrary, the statute requires the defendants to furnish conventional birth certificates at the request of any applicant. The statute only provides that no such copy may disclose the fact that the child is illegitimate or discloses information from which that fact may be ascertained. The certified record of birth does neither.

It may be that a better method could be devised to protect the interests of the child. That is, after all, the purpose of the statute. The problem, however, is not one for the court, it is a matter for the Department of Social and Health Services and the legislature to solve.[2]

---

[2]On February 21, 1976, the Governor signed into law the uniform parentage act. Laws of 1976, 1st Ex. Sess., ch. 42. By the provisions of the act, it is to apply to all actions or proceedings which shall have been commenced at the date the act becomes effective. Laws of 1976, 1st Ex. Sess., ch. 42, § 45. The act will become effective 90 days after the adjournment of the current legislative session. Const. art. 2, § 41 (amendment 26).

Upon the effective date of the act, RCW 43.20.090, in pertinent portion, will be amended to read as follows:

The state registrar shall, upon request, furnish an applicant with a certified copy of the record of any birth . . . registered under the provision of law, or that portion of the record of any birth which shows the child's full name, sex, date of birth, and date of filing of the certificate . . .

Laws of 1976, 1st Ex. Sess., ch. 42, § 36.

The proviso contained in the current form of RCW 43.20.090 stating that "a certified copy of the record of any birth may not disclose the fact of illegitimacy of birth, nor of information from which it can be ascertained" is stricken by the amending act. As it is this proviso which created the present case in controversy, its repeal will make the issue moot. Under the amended version of RCW 43.20.090 there can be no statutory basis whatsoever for refusing to issue a birth certificate for a child bearing the mother's surname.

The judgment of the trial court is affirmed.

STAFFORD, C.J., and WRIGHT, UTTER, and HOROWITZ, JJ., concur.

ROSELLINI, J. (concurring in the result)—Assuming that the majority opinion amounts to a holding that the administrative ruling in this case was arbitrary and capricious, and taking into account the fact that the legislature has now amended the statute to eliminate the requirement that illegitimacy be concealed, thus rendering the case of little precedential value, I concur in the result.

HUNTER, J., concurs with ROSELLINI, J.

HAMILTON, J. (concurring in the result)—I concur in the result of the majority opinion upon the grounds that the enactment of Laws of 1976, 1st Ex. Sess., ch. 42, § 36, modifying RCW 43.20.090, virtually renders the issue in this case moot.