128 N.J. Super. 312 (1974)
319 A.2d 793
IN THE MATTER OF THE APPLICATION OF BONNIE LEE DANIELS LAWRENCE, ALSO KNOWN AS BONNIE LEE DANIELS, FOR LEAVE TO ASSUME THE NAME OF BONNIE LEE DANIELS.
Superior Court of New Jersey, Bergen County Court.
May 2, 1974.
*313 Ms. Bonnie Lee Daniels, pro se.
BRESLIN, R.W., J.S.C., Temporarily Assigned.
Plaintiff is a law student who is married to one Adam Lawrence. Plaintiff and her husband are still legally married. The complaint recites that plaintiff has never been convicted of a crime, no suits are now pending against her, and no judgments have been recovered against her in insolvency or bankruptcy proceedings. The reasons plaintiff gives for wishing to change her name are the desire to retain an identity separate and distinct from that of her husband and the professional and social implications attendant upon such a change. Plaintiff has submitted proof of publication of her intent to change her name and has in all other respects complied with the procedures set forth in R. 4:72-1 et seq.
N.J.S.A. 2A:52-1 provides that:
Any person may institute an action in the county court of the county of which he is a resident or in the superior court, for authority to assume another name.
There are very few reported cases dealing with name changes in this State, but a few general principles are recognized. The most recent case on the subject is In re M, 91 N.J. Super. 296 (Law Div. 1966). Plaintiff in that case was an 11-month-old child born out of wedlock. He had been given *314 the surname of his mother and wished to adopt the surname of his putative father as his legal name. Both the child's mother and putative father expressed a desire to make this change, but the father's spouse opposed. The court stated the law as follows:
While there is a paucity of precedent on this question, it is apparent that the court has wide discretion in granting or refusing an application for a change of name. Circumstances of special significance that would militate against the granting of such an application would be an unworthy motive, the possibility of fraud on the public, or the choice of a name that is bizarre, unduly, lengthy, ridiculous, or offensive to common decency and good taste. [at 298]
The issue presented to the court is whether a woman who is still legally married may be granted a change of name in a judicial proceeding in order to resume the use of her maiden name as her sole legal name. A thorough review of the case and statutory law of this State discloses no authority on this point, and as a result the court must look to other jurisdictions for guidance in this matter.
A reading of the case law of various jurisdictions reveals a variety of answers to the question before us. For example, in In re Hauptly, 294 N.E.2d 833 (1973) the Court of Appeals of Indiana determined that the denial of such a petition as is presently before this court was a proper exercise of discretion by the trial court. The court in that case, after noting that plaintiff's petition was to resume the use of her maiden name as her legal name although she was still legally married, found that plaintiff had abandoned her maiden name at the time of her marriage and had assumed the surname of her husband. The court then stated:
We are not here dealing with the right of a married woman to do business or be sued in a surname other than her husband's. Without question a person, including a married female, may assume a different name by which he is known and transacts business. [at 834, 835]
The general rule applicable to a change of name is that a person may, in the absence of a fraudulent or improper *315 motive, adopt any name by which he chooses to be known. In re M, supra; Sobel v. Sobel, 46 N.J. Super. 284 (Ch. Div. 1957); State v. Librizzi, 14 N.J. Misc. 904, 188 A. 511 (Sup. Ct. 1936); Bruguier v. Bruguier, 12 N.J. Super. 350 (Ch. Div. 1951). This common law procedure may be utilized without resort to any formal legal proceeding. Such statutory proceedings are generally regarded as providing an additional method for changing one's name rather than abrogating the common law rule in this regard. See 65 C.J.S. Names § 11(2) at 32; 57 Am. Jur.2d, Name § 11 at 282.
With respect to the scope of discretion vested in the court hearing the application for a statutory change of name, 65 C.J.S. Names § 11(2), reads as follows:
The determination of an application for a change of name, however, depends, in each case on its own particular facts, and a showing of actual fraud or of the actual invasion of the rights of another is not required in order for a court to be justified in denying a change of name. It has been held that names should not be changed for trivial, capricious, or vainglorious reasons, that a change of name will be refused if the court entertains a serious doubt as to the propriety of granting it. [at 28]
See also 57 Am. Jur., 2d, Name, §§ 11, 12; In re Ross, 8 Cal.2d 608, 67 P.2d 94, 110 A.L.R. 217 (Sup. Ct. 1937); In re Taminosian, 97 Neb. 514, 150 N.W. 824 (Sup. Ct. 1915).
The effect of a judicial proceeding for change of name upon a person's common law right to adopt any name he may choose is noted in 57 Am. Jur.2d, Name, § 16 as follows:
Statutes relating to changing one's name sometimes provide that on and after the day specified in the order of the court for the change to take effect, the applicant must be known by the new name and no other. It has been said that such a statutory provision may well have the effect of barring a person who has acquired a name by judicial decree from acquiring another name without resorting to the courts. [at 285; emphasis supplied]
*316 See also, Smith v. United States Cas. Co., 197 N.Y. 420, 90 N.E. 947 (Ct. App. 1910); Brayton v. Beall, 73 S.C. 308, 53 S.E. 641 (Sup. Ct. 1906); Application of Shipley, 26 Misc. 2d 204, 205 N.Y.S.2d 581 (Sup. Ct. 1960); In re Burstein, 69 Misc. 41, 124 N.Y.S. 989 (Sup. Ct. 1910); 65 C.J.S. Name § 11(2) at 32. A similar statement is contained in N.J.S.A. 2A:52-2, which reads as follows:
Effect of judgment for change of name in general.
Such person, from and after the day specified therefor in the judgment in the action, shall be known by the name which, by the judgment, he is authorized to assume, and by no other.
It is thus apparent that if this court were to grant plaintiff's petition she would henceforth be known as Bonnie Lee Daniels. She would be forever barred from using any other name, including her husband's surname, for any purpose whatsoever without first instituting a judicial proceeding for a second change of name.
Plaintiff contends that in fact her surname has not been changed by marriage and that her maiden name is still her legal name. If this were indeed true there would be no need for plaintiff to have instituted the present proceeding, since she would be asking the court for a judgment changing her legal name from her purported name to that which is already her legal name.
There is some confusion as to what is the common law rule as to the change of a woman's surname upon marriage. After careful examination of the cases and treatises cited by plaintiff and a thorough review of the law on the subject the court has determined that plaintiff's proposition is not supported in law and is in fact based upon an erroneous interpretation of the common law.
The following quotation, taken from 57 Am. Jur.2d, Name, § 9, sets forth the general common law rule and one instance where a different interpretation prevails:
It is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and assumes *317 the husband's surname. Her correct first name, however, is her maiden Christian name, and not the Christian name of her husband. Legally, therefore, her name consists of her own Christian name and her husband's surname. * * * In divergence from the common-law rule, it has been intimated that under Louisiana law a married woman keeps her maiden name in law and bears the name of her husband only as a matter of custom. [at 281]
The Louisiana case mentioned above is Succession of Kneipp, 172 La. 411, 134 So. 376 (Sup. Ct. 1931). There the court, in discussing the weight to be given the fact that decedent's marriage license was issued in her maiden name where it was alleged she had been previously widowed, stated:
The fact that the license was issued for the marriage to Kneipp in the maiden name of the testatrix is not at all strange, for, in law, she still retained her maiden name, and bore Rupp's name, if married to him, as a matter of custom. [134 So. at 378]
This statement was not supported by any authority whatsoever. Even if precedent of some type had been relied upon, the court was stating the common law as applied in the State of Louisiana, which was derived from French law as opposed to the English origins of the common law of this and all the other states.
In a later Louisiana case, Wilty v. Jefferson Parish Democratic Exec. Comm., 245 La. 145, 157 So.2d 718 (Sup. Ct. 1963), the court, after stating that there is no definite law or decision in Louisiana as to what is the legal name of a married woman, examined the problem and determined as follows:
We conclude that a married woman's designation or appellation should be that of her Christian name and her husband's surname. [157 So.2d at 724]
A concurring opinion disagreed with the above proposition. In support of this the concurring judge relied upon Kneipp, supra, and a French treatise on civil law.
*318 Another statement of what is a married woman's legal name is found in 65 C.J.S., Names, § 3, as follows:
At marriage the wife takes the husband's surname and the surname of the husband, so taken at marriage becomes her legal name. Her maiden surname is absolutely lost, and she ceases to be known thereby. [at 4, 5; emphasis supplied]
The above language is used in Chapman v. Phoenix National Bank, 85 N.Y. 437 (Ct. App. 1881), and the court there notes that this has been the English common law for several centuries. The rule in Chapman was cited with approval in Bacon v. Boston Elevated Railway, 256 Mass. 30, 152 N.E. 35 (Sup. Jud. Ct. 1926), wherein the court held that a married woman who had registered an automobile in her maiden name, although she had used her husband's surname subsequent to their marriage, had done so improperly. Chapman was also cited in In re Kayaloff, 9 F. Supp. 176 (S.D.N.Y. 1934), which involved a professional woman who was applying for naturalization using her maiden name, which was also her professional name. The court in said case took notice of the fact that many business and professional women continue to use their maiden names after marriage for professional reasons, yet are known in private life by the surnames of their husbands. The court then stated:
It is my judgment that none of them has been damaged professionally by the fact that, upon marriage, she took the surname of her husband. I am not convinced that any loss will accrue to petitioner if she be denied a certificate in her maiden name. [at 176]
The Chapman rule is also cited with approval in Baumann v. Baumann, 250 N.Y. 382, 165 N.E. 819 (Ct. App. 1929), wherein the court refused to enjoin the second wife of Charles Baumann from using the name "Mrs. Charles Baumann," even though her husband's divorce from his first wife was invalid. The court reasoned that the first wife's status as the one and only spouse of Mr. Baumann was secure, and though *319 plaintiff had a legal right to use the name "Baumann," that right was not exclusive.
A similar situation to Kneipp occurs in State ex rel. Krupa v. Green, 114 Ohio App. 497, 177 N.E.2d 616 (App. Ct. 1961). In that case the court asserted that a woman adopts her husband's surname only by custom and that, although the State of Ohio followed this custom, no law compelled it. As in the Kneipp case, the statement of the proposition referred to was made unsupported by any authority whatsoever other than a passing reference to Ohio Jurisprudence 2d. In Krupa plaintiff filed for election as a municipal court judge, using her maiden name. She had been well known in professional and social circles by that name for many years, both before and after her marriage. Prior to the marriage plaintiff and her prospective husband entered into an agreement whereby plaintiff was to retain and use her maiden name exclusively subsequent to the marriage, and the agreement was fully complied with by plaintiff. The court found that as a result of the aforesaid actions plaintiff could be identified by no name other than her maiden name and stated:
Thus it appears she made the use of her maiden surname after marriage agreeable to her husband, used such name after marriage openly and notoriously, with no deviation whatever, and obtained a public documentation of the same. By these actions, Blanche Krupansky has clearly demonstrated her intent and purpose to be identified and known by the name of Blanche Krupansky and by no other name. [177 N.E.2d at 619]
The court then proceeded to uphold plaintiff's right to appear on the ballot using her maiden name.
A similar antenuptual agreement was entered into by plaintiff and her husband in Stuart v. Howard Cty. Bd. of Supervisors of Elections, 266 Md. 440, 295 A.2d 223 (Ct. App. 1972). Plaintiff there also consistently used her maiden name after marriage. The court held that by virtue of the antenuptual agreement and plaintiff's consistent nonfraudulent use of her maiden name subsequent to her marriage, *320 she did not undergo a change of name by marriage within the meaning of the Maryland statutes relating to voter registration and therefore would be permitted to register and vote using her maiden name. Similar factual situations, i.e., the continued exclusive use of her maiden name by a married woman subsequent to her marriage, were present in People ex rel. Rago v. Lipsky, 327 Ill. App. 63, 63 N.E.2d 642 (App. Ct. 1945); Wilty v. Jefferson Parish Democratic Exec. Comm., supra; State ex rel. Bucher v. Brower, 21 Ohio Op. 208, 7 Ohio Supp. 51 (C.P. 1941), and Custer v. Bonadies, 30 Conn. Super. 385, 318 A.2d 639 (Super. Ct. 1974). In Forbush v. Wallace, 341 F. Supp. 217 (M.D. Ala. N.D. 1971), the court does not state whether plaintiff had exclusively used her maiden name subsequent to her marriage and prior to her application for an Alabama driver's license in her maiden name. The three-judge court upheld the Alabama Department of Public Safety in its denial of plaintiff's application on the ground that the unwritten department regulation, which requires a woman to assume her husband's surname upon marriage, has a rational basis and seeks to regulate an area in which the State has a legitimate interest. The court took notice of the considerable investment made by the State in its administrative machinery and, after weighing the costs and delays attendant upon a change in this machinery against the magnitude of plaintiff's injury, concluded that plaintiff's application must be denied. The court stated that the common law was that upon marriage the wife takes the name of her husband, and that this becomes her "legal name." The court spoke further on the subject as follows:
Certainly the custom of the husband's surname denominating the wedded couple is one of long standing. While its origin is obscure, it suffices for our purposes to recognize that it is a tradition extending back into the heritage of most western civilizations. It is a custom common to all 50 states in this union. Uniformity among the several states in this area is important. [at 222]
*321 The court in Bucher, supra, determined that plaintiff was entitled to be listed on the ballot as a candidate for city commissioner using her maiden name since she had used this name exclusively since her marriage and was widely known in the community by her maiden name. The court quoted extensively from an article in the Yale Law Journal, entitled "Personal Names," by G.S. Arnold, 15 Yale L.J. 227 (1906). The article discusses the history and development of surnames in England merely as an additional means of identifying persons who had the same Christian name, which was originally regarded as the all-important name. Surnames came into common use in the 14th Century in England, and by the time of Cromwell were required of all persons. Over the years the emphasis has changed and today the surname is regarded as the primary means of identifying a person. As to the development of the surname of a wife, Arnold noted:
Gradually the son came to take the surname of his father, and the wife, (when she took one), that of the husband. [at 2]
Other cases cited by plaintiff in support of her argument include Lane v. Duchac, 73 Wis. 646, 41 N.W. 962 (Sup. Ct. 1889), which noted that the mere fact that a married woman becomes a mortgagee using her baptismal name does not thereby render her a fictitious person and invalidate the mortgage. The case did not decide the question of what is a married woman's legal name, but rather dealt with her common-law right to adopt any name she chooses for business purposes, as in the Hauptly case, supra. Also cited are Rice v. State, 37 Tex. Cr. 36, 38 S.W. 801 (Ct. App. 1897), and State ex rel. Bucher v. Brower, supra. In Rice the court, in dealing with the contention that the State in a rape case had failed to prove that the victim was not the wife of defendant, as was required by statute, stated:
It may be contended that the use of another name than that borne by the defendant sufficiently negatives the idea that she was his wife. *322 There is nothing in our statute requiring or compelling the wife to take or assume the name of her husband. While this is generally the case, yet the wife might retain her own name. She might be married to the defendant, and still be known by her maiden name, or some other name than his. "It is said, the husband being the head of a family, the wife and children adopt his family name  by custom, the wife is called by the husband's name; but whether the marriage shall work any change of name at all is, after all, a mere question of choice, and either may take the other's name, or they may join their names together." [38 S.W. at 802]
The court in Rice relied on citations to the American and English Encyclopedia of Law and the cases of Converse v. Converse, 9 Rich. Eq. 535 (S. Carolina 1856); Fendall v. Goldsmid, 2 Prob. Div. 263 (1877), and In re Snook, 2 Hilt. 566 (N.Y.C.P. 1859).
19 American and English Encyclopedia of Law, Husband and Wife, § 5 at 813 states:
Ths husband being the head of the family, the wife and children generally adopt his name-by custom, the wife is called by the husband's name. But whether marriage shall work any change of name at all is, after all, a mere question of choice, and either may take the other's name, or they may join their names together.
The Converse, Fendall and Snook cases are relied upon as authority. Converse involved the validity of the exercise of a power of appointment by plaintiff wife to transfer her property which was subject to the power to her husband. The parties had separated subsequent to the wife's exercise of the power due to the husband's alleged maltreatment of the wife. Plaintiff also sought to have her surname changed from that of defendant to that of her first husband. In denying the application of plaintiff for a change of name the court noted:
Nor can another proposition of the plaintiff be entertained, namely, to change her name from that of `Converse' to that of `De Veaux,' which is the name of her first husband. The court undoubtedly possesses the power to change the name of a party who may make such an application for such purpose. If in this mode the name of a husband was changed, that of the wife would also be changed, as a necessary consequence. But an application to change the name of a wife *323 without the concurrence and consent of the husband is without a precedent. It seems to be wrong in principle. How do I know these parties may not become reconciled? [9 Rich. Eq. at 539, 540; emphasis supplied]
The above language clearly stands only for the proposition that a woman may file an application in a divorce action to shed the surname of her husband with his consent. The language used by the court goes no further than this, although the italicized sentence indicates a recognition by the court that the name of a married woman is inexorably lined to that of her husband.
Fendall v. Goldsmid, supra, involved the marriage, without proper publication of marriage banns, of two persons who had previously divorced each other. Petitioner Alice Goldsmid had had the banns published under that name, although ever since the dissolution of the prior marriage she had been known as Alice Fendall, her maiden name. In dismissing the petition the court stated that marriage confers a name upon a woman which becomes her actual name, and that she can only obtain another name by reputation.
The Snook case involved a man who wished to change his German surname to its English translation for business reasons and pecuniary benefits. The court denied the petition, stating that in its opinion no such benefits would inure and therefore the change could not be granted, although petitioner could continue to use his assumed name as the name by which he was known in the business community. The court in Snook discusses the history of surnames in some detail, dealing primarily with men's surnames. The only references to the surname of a woman concern the publication of marriage banns. The case does not deal with the surname of a married woman. However, it is cited in Rich v. Mayer, 7 N.Y.S. 69 (N.Y. City Ct. 1889), as authority for the proposition that a woman may properly assume her maiden name after she has divorced her husband. The court in Rich states the law as follows:
*324 At common law a person may lawfully change his name. He is bound by any contract into which he may enter in his adopted or reputed name, and by his recognized name he may sue or be sued. See cases cited in Anderson's Dictionary, Tit. `Name.' The plaintiff had procured a divorce from a bad husband and judiciously dropped his bad name and resumed that given by her parents. It was, in effect, the resumption of her original name by operation of law, rather than choice or fancy. It was certainly not a change made for sinister or ulterior motives, but one that is praiseworthy and commendable. The marriage relation gave her the name she bore during its continuance. Its dissolution restored her former rights, one of which was the liberty of bearing her family name, and this privilege she has seen fit to exercise. [at 70, 71]
The case of Cowley v. Cowley, [1901] A.C. 450 (H.L. 1901), involved the Earl of Cowley who complained that his commoner ex-wife was continuing to use the title "Countess of Cowley" although she was now married to a commoner. The court held that the Earl had suffered neither legal wrong nor damage. It was conceded that nothing in the divorce decree deprived the countess of either the title or the privileges which she had acquired as the wife of the earl. It also noted that commoners who become peeresses by marriage retain their titles after remarriage to commoners by courtesy and the usages of society, not as a matter of right. Cowley dealt with a woman's right to continue the use of her married name, not her right to discard it. The case, along with Fendall v. Goldsmid, supra, is cited in 19 Halsbury's Laws of England, Husband and Wife, § 1350 at 829, as supporting the proposition that a woman's change of name by marriage is a change in fact only and not a change in law.
A careful reading of the above cases and articles leads this court to the inescapable conclusion that the reliance placed upon them by the court in Rice v. State, as quoted supra, for the proposition that a woman adopts her husband's name upon marriage only as a matter of custom and not as a matter of law, is misplaced, and that therefore the statement of the law in Rice is erroneous.
A much-cited work on the question before this court is The Law of Married Women by Moss Turner-Samuels *325 (1957). The author states (at 345) that the practice of a woman taking her husband's surname upon marriage is a custom only and not compellable by law. The author cites no authority for this statement. He then remarks that a wife may continue to use her maiden, married, or any other name by which she wishes to be known. The context in which this statement is made leads the court to the conclusion that the author was referring to a person's change of name by the common-law rather than the statutory method. The cases relied upon by the author in support of his contention are Cowley v. Cowley, supra; Davies v. Lowndes, 1 Bing. N.C. 597 (1835), and DuBoulay v. DuBoulay (1869) L.R. 2 P.C. 430. In Davies the decedent appointed William Lowndes his lawful heir, provided that no heir at law of decedent was found, and further provided that Lowndes change his surname to Selby, the surname of decedent. The main point of the case as far as change of name is concerned is that a person need not go through a formal proceeding to change his name, but may do so by what has been referred to as the common-law method, supra.
The DuBoulay case involved a woman who was holding herself and her child out to the community as the wife and child of plaintiff. The court refused to enjoin her from continuing to do so. The case stands for the proposition that a court will, under certain circumstances, refrain from stepping in to prohibit a woman from using the surname of another, even though she is not related to him by blood or marriage. Neither of the above cases deals with the subject of the proper legal name of a married woman.
Turner-Samuels also mentions the case of Lady Hatton, the second wife of Sir Edward Coke, who refused to take her second husband's name and in fact never did so. This situation was never before a court of law and cannot be cited as precedent. Even if it were to be relied upon it would fall into that class of cases wherein the wife never takes her husband's surname but uses her prior name consistently and nonfraudulently.
*326 Thus it is apparent that the statements made by Turner-Samuels as to the true name of a married woman are also without foundation.
The remaining authorities cited by plaintiff are Priscilla Ruth MacDougall, "Married Women's Common Law Right to Their Own Surnames," Women's Rights L. Rptr. (Fall-Winter 1972-73), and Kathleen A. Carlsson, "Surnames of Married Women and Legitimate Children," 17 N.Y.L.F. 552 (1971). Both of these articles conclude that a woman has a common law right to retain the use of her maiden surname. However, in support of this conclusion both authors rely primarily on the cases discussed, supra. Since the court has concluded that those cases do not in fact support the above proposition, plaintiff cannot rely on these articles as authority.
In all of the cases discussed in this opinion in which the wife was allowed to retain her maiden name, she had used the name exclusively, consistently and nonfraudulently in all her affairs, both before and after marriage. Plaintiff in the present case has offered no evidence to show that she has similarly conducted her affairs. In fact, plaintiff filed the petition itself, using her husband's surname and giving her full maiden name as an alternative appellation. The law which plaintiff has relied upon as authority for her contention that she still legally retains her maiden name has been shown upon close examination and analysis not to be supportive of the proposition. While there is still no clear statement of what is a married woman's legal name, it cannot be denied that the tradition of a woman adopting her husband's surname upon marriage is deeply imbedded in the common law of both Great Britain and the United States, and is almost universally followed to this day.
The Legislature of this State reflects its awareness of this situation in N.J.S.A. 2A:34-21, wherein it provides:
The court, upon or after granting a divorce from the bonds of matrimony to either spouse, may allow the wife to resume any name *327 used by her before the marriage, and may also order the wife to refrain from using the surname of the husband as her name. [Emphasis supplied]
This language demonstrates both the view of the Legislature that a woman upon marriage adopts her husband's surname, and its intent that, after a marriage has been terminated, a wife does not have an unfettered legal right to use her maiden name or any name other than her husband's surname. Rather, this determination is to be made within the discretion of the court. The general discretionary power of the court has been discussed in In re M, supra, and is further expressed in R. 4:72-4, which provides in part:
On the date fixed for hearing, the court, if satisfied from the filed papers, with or without oral testimony, that there is no reasonable objection to the assumption of another name by plaintiff, it shall by its judgment authorize him to assume such other name * * * [Emphasis supplied]
After careful consideration of the merits of plaintiff's application, the court is not so satisfied. This court has great concern for the stability of the family and the marriage relationship. As is stated in 41 Am. Jur.2d, Husband and Wife, § 3:
The public interest in the marriage relationship is greater even than the private interest of husband and wife in their relationship. The law favors the marital relation and the permanence of the family. The family, with the obligations and privileges pertaining to it, reaches back of all state regulations, although it is necessarily regulated by positive law.
Plaintiff and her husband are both of youthful age. Although they have no children at this time, it is not at all improbable that they will eventually raise a family. The situation which would be created by the granting of plaintiff's application, viz., plaintiff and her husband each continuing to use the surnames with which they were born, would cause great confusion in the community in which they *328 live and could well have a traumatic effect upon any children they might have. This is especially true in light of plaintiff's use of her husband's surname subsequent to her marriage. The problem would also arise of what surname to give the children of their marriage and the confusion and bureaucratic nightmares the process of selecting a surname would create.
As a result of the foregoing discussion, this court is of the opinion that there is sufficient cause in this matter for it in its sound discretion to deny plaintiff's petition, and the same is hereby denied.