IN THE MATTER OF THE CHANGE OF NAME OF: JAYNE BRYANT MOHLMAN to JAYNE MARIE BRYANT; ELSIE THULL CISAR to ELSIE ELIZABETH THULL; MARGARET PIPES LYSAGHT to MARGARET LINDSEY PIPES; ELIZABETH BUIE SMITH to ELIZABETH ANNE BUIE

No. 7510SC137

(Filed 18 June 1975)

1. Names— married woman — use of husband's surname not mandatory

There is no common law or statutory requirement in this State that a married woman use her husband's surname.

In re Mohlman

**2. Common Law; Names— change of name at will — common law in force in N. C.**

At common law, a person may lawfully change his name at will and assume a new name so long as it is not for a fraudulent or illegal purpose, and, of course, the common law of England is in force in this State to the extent that it has not been abrogated or repealed by statute and to the extent that it is not repugnant to or destructive of our form of government.

**3. Names— power of General Assembly to regulate name changes**

The N. C. Constitution prohibits the General Assembly from enacting any private, local, or special act or resolution altering the name of any person, but the legislature does have the power to pass general laws regulating the same. N. C. Constitution, Art. II, § 24(1)(n); G.S. 101-1.

**4. Names— change of name — effect of statutes on common law**

It is generally held that statutes regulating the change of a person's name and prescribing a procedure therefor do not abrogate the common law rule which allows a person to change his name without resort to legal procedure or repeal it by implication or otherwise; rather, they merely affirm and are in aid of the common law rule and provide an additional method of effecting a change of name, and, more importantly, provide a method for recording the change.

**5. Names— change of name — discretion of court**

While it is true that under the common law standard a showing of fraud or misrepresentation akin to fraud is necessary to deny a change of name, the statutes providing a procedure for change of name are not absolute in granting the privileges but are usually so phrased as to leave it in the reasonable discretion of the court hearing the petition either to grant or deny it; and while it is generally held that some substantial reason must exist before the court is justified in refusing to grant the petition, it is also the general rule that the court is not subject to the whim or capricious desire of a petitioner to change his name.

**6. Names— change of name — burden on petitioner to show good and sufficient reason**

Since the General Assembly has provided that a person may change his name for good cause shown and for good and sufficient reasons, there must be a hearing upon a petition for change of name and petitioner has the burden of establishing that it is just and reasonable that the petition be granted—not merely that petitioner desires it and that the request is without fraud.

**7. Names— married woman — change of name from husband's surname to maiden name — failure to show good and sufficient reasons**

The trial court properly denied the petitions of four married women who sought, without dissolving their marriages, to resume the use of their maiden names "for personal and professional reasons" where petitioners offered no evidence and refused to do so except for

introduction of the pleadings, thereby failing to show good and sufficient reason for granting the petitions.

Judge CLARK concurring.

APPEAL by petitioners from *Smith, Judge.* Judgments entered on 29 January 1975 and 30 January 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 16 April 1975.

These four cases present identical questions for our consideration and were consolidated for purposes of appeal. In each proceeding a married woman sought, pursuant to Chapter 101 of the North Carolina General Statutes, and without dissolving her marriage, to resume the use of her maiden name "for personal and professional reasons." In each instance the Clerk of Superior Court of Wake County denied relief on grounds that in his opinion "good and sufficient reasons" did not exist for the change. On appeal to the Superior Court in each proceeding the trial judge concluded as a matter of law:

"1. That at common law, a woman upon marriage, assumed the surname of her husband as her own.

2. That common law marriages and the instances thereof were abolished by the General Assembly of North Carolina on the adoption of chapter 51 of the General Statutes of North Carolina which said chapter provided for a statutory method of uniting a couple in matrimony.

3. That the General Statutes of North Carolina and particularly chapter 51 thereof contain no provision requiring a female person to assume her husband's surname upon marriage, other than the implication thereof contained in N.C.G.S. 50-12.

4. That at common law a person could assume any name of his choosing so long as it was not done for fraudulent purposes or to hide his true identity.

5. That a person in North Carolina may still assume and use any name of choosing so long as the same is not done with the intent to defraud or to hide one's true identity.

6. That the petitioner has not shown good and sufficient reason for allowing the change of name as required in N.C.G.S. 101-5 or any reason except that '. . . for business and professional reasons . . . ' she desires the change.

7. That the relief sought by the petitioner in this proceeding is unnecessary for the reasons set forth in conclusion #5 hereof."

The trial judge then entered an order dismissing each of the petitioner's applications and denying the relief sought. Petitioners appealed.

*Deborah G. Mailman for petitioner appellants.*

*Women-in-Law, University of North Carolina School of Law, Chapel Hill, North Carolina, by Irene Bartlett, Anne Edenfield, Joanne Foil and Susan Owens, Amicus Curiae, for petitioner appellants.*

*Attorney General Edmisten, by Associate Attorney Alan S. Hirsch, for the State.*

MORRIS, Judge.

These appeals present a novel question in this jurisdiction. Decision requires that we look not only to the common law, but to decided cases from other jurisdictions.

The court in its judgment in each case concluded as a matter of law "[t]hat at common law, a woman upon marriage, assumed the surname of her husband as her own." It appears clear that in England from whence came our customs with respect to names, there is not now and has never been any common law *requirement* that a wife assume her husband's name.

"When a woman on her marriage assumes, as she usually does in England, the surname of her husband in substitution for her father's name, it may be said that she acquires a new name by repute. *The change of name is in fact, rather than in law, a consequence of the marriage.* Having assumed her husband's name she retains it, notwithstanding the dissolution of the marriage by decree of divorce or nullity, unless she chooses thereupon to resume her maiden name or acquires another name by reputation. On her second marriage there is nothing in point of law to prevent her from retaining her first husband's name." 19 Halsbury's Laws of England 829 (3d Ed. 1957). See also 9 American and English Encyclopedia of Law, *Husband and Wife,* § 5, p. 813 (1889). (Emphasis supplied.)

A celebrated instance of a refusal to follow the custom was the well known instance of Lady Hatton, the second wife of Sir Edward Coke, who refused to use his name but continued throughout her marriage to use the name Lady Hatton.

That a married woman voluntarily assumes and uses her husband's surname but is under no legal compulsion to do so, absent a statutory requirement, is supported by a number of recent cases. *Kruzel v. Podell,* 67 Wisc. 2d 138, 226 N.W. 2d 458 (1975); *Custer v. Bonadies,* 30 Conn. Sup. 385, 318 A. 2d 639 (1974); Application of Halligan, 76 Mis. 2d 190, 350 N.Y.S. 2d 63 (1973); *Stuart v. Board of Supervisors of Elections,* 266 Md. 440, 295 A. 2d 223 (1972); *Wilty v. Jefferson Parish Democratic Committee,* 243 La. 145, 157 So. 2d 718 (1963); *State, ex rel. v. Green,* 114 Ohio App. 497, 177 N.E. 2d 616 (1961); *State, ex rel. Bucher v. Brower,* 7 Ohio Supp. 51, 21 Ohio Op. 208 (1941).

[1] This custom has been adopted and followed by the vast majority of married women in every state of the Union. We find no statutory requirement in this State that a married woman use her husband's surname. We are, of course, aware of G.S. 50-12 providing that upon divorce a woman "may resume the use of her maiden name or the name of a prior deceased husband, . . . " upon application to the Clerk, but we do not interpret that statute as implying a *requirement* that a married woman *must* assume her husband's surname. It merely recognizes that by her marriage the wife may have, through usage, effected a common law change in her name, but it does not indicate that she was compelled to do so. Although there is no common law requirement, it is certainly now and has been since the beginning of the history of this State, the custom that a married woman use her husband's surname. We recognize there are exceptions and these will be referred to. At this point, however, suffice it to say, that in this jurisdiction there is no legal compulsion for a wife to assume her husband's surname. We do not think that the court's conclusion in this case necessarily requires the interpretation that at common law a married woman is *required* to assume her husband's surname. However, in order to avoid confusion, to the extent that it does require such an interpretation, the conclusion is erroneous.

In early England, a person's surname was relatively unimportant. The given name was more important, and, as a

matter of fact, the surname, if any, was frequently not used even in legal matters. A grant to John, son of William, was perfectly good, if otherwise legally sufficient. Gradually in England surnames came into use as an additional means of identifying people who had the same Christian name. "Surnames came into common use in the 14th Century in England, and by the time of Cromwell, were required of all persons." Application of Lawrence, 128 N.J. Super. 312, 319 A. 2d 793 (1974). At English common law, the surname could be changed at will, "and this without the intervention of either the sovereign, the courts, or Parliament." 21 American and English Encyclopedia of Law 311 (2d Ed. 1902). To obtain a change of the Christian name, however, one had to be confirmed with the consent of the bishop and for good cause shown or obtain an Act of Parliament. This is still the case in England. *In re Evett's Appeal,* 392 S.W. 2d 781 (Tex. Civ. App. 1965), and see also 5 Journal of Family Law, Note, "The Right to Change One's Name" 220 (1965).

[2] At common law, then, a person may lawfully change his name at will and assume a new name so long as it is not for a fraudulent, or illegal purpose. He may enter a contract or other obligation under any name he chooses to assume. "The law is chiefly concerned with the identity of the individual, and when that is ascertained and clearly established, the act will be binding on him and on others." 57 Am. Jur. 2d, *Name,* § 22, pp. 289, 290. Of course, the common law of England is in force in this State to the extent that it has not been abrogated or repealed by statute and to the extent that it is not repugnant to or destructive of our form of government. *McMichael v. Proctor,* 243 N.C. 479, 91 S.E. 2d 231 (1955).

[3] It is interesting to note that the Constitution of North Carolina adopted in 1868 contained, in Section 11 of Article 2, the following provision:

> "The general assembly shall not have power to pass any private law to alter the name of any person, . . . but shall have power to pass general laws regulating the same." Vol. 1, Mordecai's Law Lectures, 2d Ed. 18 (1916).

The Constitution still prohibits the General Assembly from enacting any private, local, or special act or resolution altering the name of any person. N. C. Constitution, Art. II, § 24(1)(n). This provision has been codified as G.S. 101-1 which provides that "The General Assembly shall not have the power to pass

any private law to alter the name of any person, but shall have power to pass general laws regulating the same."

[4] The General Assembly has, by Chapter 101 of the General Statutes of North Carolina, enacted general laws regulating the change of a person's name, and prescribing a procedure therefor. Many other states have done so. See 57 Am. Jur. 2d, *Name*, § 11, p. 282 (1971). It is generally held that these statutes do not abrogate the common law rule which allows a person to change his name without resort to legal procedure or repeal it by implication or otherwise. They merely affirm and are in aid of the common law rule and provide an additional method of effecting a change of name and, more importantly, provide a method for recording the change. *In re Evett's Appeal, supra* (and cases there cited) ; 5 Journal of Family Law 222; Application of Lawrence, 128 N.J. Super. 312, 319 A. 2d 793 (1974) ; 57 Am. Jur. 2d, supra.

G.S. 101-2, in setting out the procedure for changing one's name, provides that "[a] person who wishes, *for good cause shown,* to change his name must file his application before the clerk of the superior court of the county in which he lives, having first given 10 days' notice of the application by publication at the courthouse door." (Emphasis supplied.)

G.S. 101-3 prescribes the information which the application shall contain, and G.S. 101-4 requires that the applicant shall file with the petition proof of his good character "which proof must be made by at least two citizens of the county who know his standing." G.S. 101-5 provides that "[i]f the clerk thinks that *good and sufficient reason exists* for the change of name, it shall be his duty to issue an order changing the name of the applicant from his true name to the name sought to be adopted." Chapter 101 also provides for recording the name change on the public records of the county and with the State Registrar of Vital Statistics, and further that a person may change his name only once under the provisions of the statutes except that he shall be permitted to resume his former name upon compliance with the requirements and procedure set out therein.

[5] While it is true that under the common law standard a showing of fraud or misrepresentation akin to fraud is necessary to deny a change of name, the statutes providing a procedure for change of name are not absolute in granting the privileges but are usually so phrased as to leave it in the reason-

able discretion of the court hearing the petition either to grant or deny it. While it is generally held that some substantial reason must exist before the court is justified in refusing to grant the petition, it is also the general rule that the court is not subject to the whim or capricious desire of a petitioner to change his name. See 57 Am. Jur. 2d, *Name,* § 10, p. 282 et seq. (1971) ; 5 Journal of Family Law, supra; Petition of Hauptly, _____ Ind. _____, 312 N.E. 2d 857 (1974) ; Application of Lawrence, supra; annotation, "Duty and discretion of court in passing upon petition to change name of individual," 110 A.L.R. 219 (1937) and cases there cited.

It is, of course, a matter of common knowledge that persons in the world of entertainment and like occupations quite often use an assumed or stage name quite different from their birth given name or the name assumed upon marriage. It is also a matter of common knowledge that quite frequently a married woman who has her separate professional career will use in the practice of her profession the name by which she is generally known to her patients or clients or colleagues while using her husband's surname socially and familially. These situations rarely cause confusion, and usually do not require application of the policy behind the name changing statutes. However, with the increasing mobility of our society, and the growing dependence upon credit cards, automated check cashers, charge accounts, computerized record keeping both in commerce and in government, numerous name changes can lead to chaotic confusion. Thus, it appears completely obvious that to provide a procedure whereby one can secure a change of name through legal procedure with a provision for proper recordation thereof among the public records is desirable and far less objectionable than the common law provision. While we find nothing in the law which states that by marriage a woman gives up her right as a person to change her name as anyone else might change his or hers, nevertheless, we still assume that the great majority of women, upon becoming married, will follow established custom and tradition and adopt and use the surname of the husband. There are and will be those who will hear a different drummer and step to that music, and the fact that they will constitute a definite minority should not foreclose to them the invocation of the provisions of the statute.

[6, 7]  Our General Assembly, recognizing there are circumstances under which a legally sanctioned change of name may

be warranted—regardless of the attendant burdens to the bench and bar, commerce, government, and society—has provided the procedure. In so doing, the General Assembly has provided that a person may change his name under the statute *for good cause shown and for good and sufficient reasons.* This contemplates a hearing, and petitioner has the burden of establishing that it is just and reasonable that the petition be granted—not merely that petitioner desires it and that the request is without fraud. We are of the opinion that the words "for good cause shown" and "good and sufficient reason" mean more than merely the absence of fraud. Each petitioner here alleged that her true name is her husband's surname, and she desired to resume her maiden or birth given name "for personal and professional reasons." None offered evidence. We do not think this is sufficient to establish "good cause shown" or "good and sufficient reason." In their brief, they set out the evidence they could have given. The court's judgment, in each case, states that the petitioner was offered the opportunity to present evidence and refused to do so except for the introduction of the pleadings. In each judgment the trial court found that the petitioner had not shown good and sufficient reason for allowing the change of name requested and denied the relief sought. With this finding we agree and this action of the trial court is affirmed. Petitioners may, if so advised, file new petitions. The trial court further found in each judgment that the relief sought by the proceeding is unnecessary for the reasons set forth in conclusion No. 5.

To the extent that the court, in denying relief and dismissing the petition, based its action upon its finding that the relief sought is unnecessary, it did so erroneously.

Affirmed.

Judges VAUGHN and CLARK concur.

CLARK, Judge, concurring:

Though concurring in the result and also the conclusion of the majority that a married woman may change her name as provided by Chapter 101 of the General Statutes of North Carolina, I do not agree that she is under no legal compulsion to assume her husband's surname. That upon marriage the wife by operation of law takes the husband's surname is based on

custom extending back for centuries into the heritage of western civilization. It has ripened into a common law rule that has been generally recognized by the states, including by implication the State of North Carolina. See generally *Forbush v. Wallace,* 341 F. Supp. 217 (M.D. Ala. 1971); 2 Lee, N. C. Family Law, § 221 (3d ed. 1963); Annot., 35 A.L.R. 417 (1925); 57 Am. Jur. 2d, Name, § 9 (1971); 65 C.J.S., Names, § 3(c) (1966).