## Richmond

In Re: Change of Names of Donna Jean Strikwerda and Judith Halsey Antell.

December 1, 1975.

Record No. 750244.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*F. Guthrie Gordon; Diane McQ. Strickland,* for appellants.

*Andrew P. Miller, Attorney General of Virginia, amicus curiae.*

Cochran, J., delivered the opinion of the court.

This appeal presents the novel question whether a wife's petition to resume her maiden name, approved by her husband, may be denied, where the change of name is not sought for an illegal purpose and the couple have agreed that any children born of the marriage will bear the husband's surname.

Donna Jean Stienstra married Thomas Earl Strikwerda in 1970 and thereafter used her husband's surname. In 1974 she filed a petition in the trial court, pursuant to Code § 8-577.1 (Cum. Supp. 1973)[1] to change her name back to Donna Jean Stienstra. Judith Burnett Halsey married Richard Henrik Antell in 1972 and thereafter used his surname. In 1974 she petitioned the trial court, pursuant to Code § 8-577.1, to change her name back to Judith Burnett Halsey. Her husband joined in the petition to evidence his approval. After the cases had been consolidated for trial, the evidence in support of both petitions was heard *ore tenus* by the trial court.

Mrs. Strikwerda testified that she was a graduate student in sociology, and that she filed her petition because she desired to maintain her separate identity and in the future to publish articles under her maiden name. Mrs. Antell testified that she was an architectural student, and that she filed her petition only because she desired to maintain her separate identity and, in the future, to practice her profession under her maiden name. Each petitioner and her husband testified that the petition was not filed for any fraudulent purpose, and that they had agreed that any children born of their marriage would bear the husband's surname.

---

[1] Code § 8-577.1 provides:

"Any person desiring to change his own name or that of his child or ward may apply therefor to the circuit court of the county or the circuit or corporation court of the city in which the person whose name is to be changed resides or the judge thereof in vacation. In case of a minor who has no parent or guardian, the application may be made by his next friend. Such application shall include the place of residence of applicant, names of both parents, including maiden name of mother, date and place of birth of applicant, and if applicant has previously changed his name, his former name or names. On any such application the court, in its discretion, may order a change of name and the clerk of the court shall enter the order upon the current deed book in his office, index it in both the old and new names and transmit a certified copy to the State Registrar of Vital Statistics. Such order shall set forth the date and place of birth of the person whose name is changed, and if the name changed is that of a person who has previously changed his name, his former name or names.

"If any person residing in this State changes his name or assumes another name, unlawfully, he shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than ten dollars nor more than one hundred dollars and upon a repetition thereof shall be confined in jail not exceeding sixty days."

In a memorandum opinion the trial court noted that various circuit courts in Virginia, in considering similar petitions, had reached different results. The court acknowledged that the Attorney General of Virginia had argued, in an *amicus curiae* brief filed in a similar proceeding in another circuit, that such a petition should be granted unless the name change is sought for an illegal purpose. The court, however, observed that Code § 8-577.1 provides no procedure for making other persons parties to the proceeding or for giving notice to creditors, so that a petitioner's evidence that the change of name is not sought for an illegal purpose must, "for all practical purposes", be accepted. In its final order entered December 17, 1974, which the petitioners have appealed, the trial court found that "the parties have testified truthfully", but denied their petitions on the ground that only Code § 20-107[2] affords a married woman the right to resume her maiden name. We do not agree.

We find no conflict or inconsistency between Code §§ 8-577.1 and 20-107. Nothing in the wording of § 8-577.1 purports to exclude from its provisions a married woman who desires to change her name back to her maiden name. Nothing in the wording of § 20-107 indicates that this is intended to be the exclusive statutory authority for such a change of name. There is no statute that prohibits a married woman from resuming her maiden name.

The English common law, if not repugnant to the Bill of Rights and the Constitution of Virginia, continues in force in this state, except as amended by statute. Code § 1-10 (Repl. Vol. 1973). *See Commonwealth* v. *Holland*, 211 Va. 530, 532, 178 S.E.2d 506, 507 (1971). Under the common law a person is free to adopt any name if it is not done for a fraudulent purpose or in infringement upon the rights of others. *Custer* v. *Bonadies*, 30 Conn. Sup. 385, 387, 318 A.2d 639, 640 (1974). Indeed, although a married woman may, as she customarily does, assume her husband's surname, she is under no legal compulsion to do so. *Stuart* v. *Board of Supervisors of Elections*, 266 Md. 440, 445, 295 A.2d 223, 225-27 (1972); *State ex rel. Krupa* v. *Green*, 114 Ohio App. 497, 499, 177 N.E.2d 616, 619 (1961); *Custer* v. *Bonadies, supra.*

In the present case the petitioners elected to adopt their husbands' surnames and to hold themselves out by their married names rather than to retain their maiden names. The right of a married

---

[2] Code § 20-107 provides in pertinent part:

". . . Upon decreeing a divorce from the bond of matrimony, the court may allow either party to resume a former name. . . ."

woman, under these circumstances, to resume her maiden name, absent fraudulent or criminal purpose, in change-of-name proceedings has been recognized in other jurisdictions. *Kruzel* v. *Podell,* 67 Wis.2d 138, 226 N.W.2d 458 (1975); *Application of Lawrence,* 133 N.J. Super. 408, 337 A.2d 49 (1975); *Marshall* v. *State,* 301 So.2d 477 (Fla. D. Ct. App. 1974); *Petition of Hauptly,* 262 Ind. 150, 312 N.E.2d 857 (1974); *Application of Halligan,* 361 N.Y.S.2d 458 (App. Div. 1974).

We find nothing to the contrary in the Constitution or statutes of Virginia. Section 14 of Article IV of the Constitution provides that "[t]he General Assembly shall confer on the courts power to . . . change the names of persons". The General Assembly has carried out its constitutional mandate by the enactment of Code §§ 8-577.1 and 20-107. Code § 8-577.1, applicable to "any person", requires that certain information be set forth in a petition for name change and then, without providing guidelines, leaves the granting of the application to the discretion of the court. It is true, as the trial court noted, that the statute provides no effective procedure for challenging a petitioner's evidence that the petition was not filed for an unlawful purpose. This is a statutory omission that may deserve consideration by the General Assembly. But the defect, if it be a defect, affects all petitions under the statute, and not merely those filed by married women who desire to resume their maiden names. Moreover, the inclusion in the statute of criminal penalties for one who unlawfully "changes his name or assumes another name" suggests that, in the absence of an illegal purpose, a change of name petition should be granted.

In the present case there are no children, and agreement has been reached that any children born to either marriage will take their father's surname. Each of the husbands has affirmatively supported his wife's petition. Thus, there is little likelihood that a name change would have a disruptive effect on the family. The trial court found that neither party had filed her petition for an illegal, fraudulent or immoral purpose. Therefore, we hold that the trial court abused its discretion in denying the petitions of these applicants to resume their maiden names.

Accordingly, the judgment of the trial court is reversed and the case is remanded for entry of orders granting the petitions for change of name.

*Reversed and remanded.*