605 P.2d 447

**Margaret Evelyn MALONE, Petitioner,**

v.

**Honorable John SULLIVAN, Commissioner, Domestic Relations Division, Superior Court of Maricopa County, Respondent.**

No. 14541.

Supreme Court of Arizona,
In Banc.

Jan. 15, 1980.

Richard S. Plattner, Phoenix, for petitioner.

John Sullivan in pro. per.

Charles F. Hyder, Maricopa County Atty. by Albert Firestein, Phoenix, for respondent.

Ryley, Carlock & Ralston by Susan M. Swick and Joyce Y. Neeley, Arizona Ass'n of Women Lawyers, Martori, Meyer, Hendricks & Victor, P.A. by Lucia A. Fakonas, Phoenix, Center for Women and Law, brief amicus curiae.

CAMERON, Justice.

This is a special action brought by petitioner Margaret Evelyn Malone to review the refusal of the court commissioner of Maricopa County to consider her petition for dissolution of marriage. We have jurisdiction pursuant to Rule 8, Rules of Procedure for Special Actions, 17A A.R.S.

We need answer only one question: Did the commissioner abuse his discretion in refusing to consider petitioner's petition for dissolution of marriage because the petition was filed in petitioner's maiden or paternal surname rather than in her husband's surname?

The facts necessary for a disposition of this special action are as follows. Petitioner, Margaret Evelyn Malone, married Herbert Gary Hulett on 30 September 1978 in Arizona. After her marriage she continued to use the name of Margaret Evelyn Malone and did not adopt her husband's surname. On 22 February 1979, petitioner, using the name of Margaret Evelyn Malone, filed a petition for dissolution of that marriage in Maricopa County Superior Court. Her husband was served with process on 1 March 1979 and did not file a response. A default hearing was scheduled for 16 May 1979 in Domestic Relations Court. When petitioner's case was called, respondent commissioner refused to hear her case until the default decree was amended to indicate her name was the same as her husband's, "Hulett." He based this on his finding that Ms. Malone "is married to Mr. Hulett and that her name has not been lawfully changed to Malone."

A second hearing was held before the commissioner on 10 August 1979 at which time the commissioner again refused to hear the matter. We accepted the petition for special action to clarify what we felt to be a misapplication of the law and because there was no speedy and adequate remedy by appeal.

There is no Arizona statute that requires a change of name upon marriage. A.R.S. § 25–325 provides that upon request of a wife whose marriage is dissolved or declared invalid, the court shall order her maiden or former name restored. This statute recognizes that a wife generally assumes her husband's surname at marriage and that she may wish to resume her for-

mer name after dissolution. The statute does not require that upon marriage a woman must take the name of her husband.

A.R.S. §§ 12–601 and 602 provide for a change of name. This statute is in aid of the common law rule that absent fraud or improper motive, a person may adopt any name he or she wishes. *Laks v. Laks,* 25 Ariz.App. 58, 540 P.2d 1277 (1975).

> "The general rule applicable to a change of name is that a person may, in the absence of a fraudulent or improper motive, adopt any name by which he chooses to be known. (citations omitted) This common law procedure may be utilized without resort to any formal legal proceeding. Such statutory proceedings are generally regarded as providing an additional method for changing one's name rather than abrogating the common law rule in this regard. (citations omitted)" *Application of Lawrence,* 128 N.J.Super. 312, 314–15, 319 A.2d 793, 794 (1974), reversed on other grounds, 133 N.J.Super. 408, 337 A.2d 49 (App.Div.1975).

We find no other statute which indicates that a woman must take her husband's surname at the time of marriage. Any requirement that a woman must take her husband's name at the time of marriage must then be found in the common law and not statutory law.

It would appear from law review articles [1] that in eleventh century England, surnames were not used; people were merely known by their given, or Christian, names. See discussion in *Dunn v. Palermo,* 522 S.W.2d 679, 681–82 (Tenn.1975). By the fourteenth century, however, population levels had risen so as to necessitate further means of identification and surnames began to be adopted. J. Lamber, A Married Woman's Surname: Is Custom Law?, 1973 Wash. U.L.Q. 779, 780. These were mostly descriptive and tended to indicate one's occu-

pation, physical characteristics, or family position. *Dunn v. Palermo,* supra, at 681. The process of acquiring names was flexible and quite informal. People would change their surnames several times during a lifetime. Women were nor required to adopt their husbands' surnames, and husbands and wives were often known by different surnames. Comment, The Right of a Married Woman to Use Her Birth-given Surname for Voter Registration, 32 Md.L.Rev. 409 (1973). See, for instance, the often cited case of *Cowley v. Cowley,* A.C. 450 (1901). Men sometimes adopted their wives' surnames, and it was common for children of prominent or wealthy women to adopt their mother's surname. Lamber, supra, at 781.

In the fourteenth century, Henry VIII established regulations governing recording of births, marriages, and deaths. At that time surnames began to be hereditary, "but only by custom * * *." *Laks .. Laks,* supra, 25 Ariz.App. at 60, 540 P.2d at 1279.

The common law concept of "merger" greatly contributed to this custom of wives adopting their husbands' surnames. Under that theory, now largely rejected under the Married Women's Acts, see *Leibes v. Steffy,* 4 Ariz. 11, 32 P. 261 (1893); 41 Am.Jr.2d, Husbands and Wives, §§ 16 and 17, p. 30; a woman was precluded from acquiring or selling property, making contracts, or suing or being sued in her own name without the joinder of her husband. *Thompson v. Thompson,* 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910); Annotation, Right of Married Woman to Use Maiden Surname, 67 A.L.R.3d 1266 at § 2(a), p. 1270 (1975). Women were then best identified by their husbands' surnames. *Kruzel v. Podell,* 67 Wis.2d 138, 226 N.W.2d 458 (1975). This adoption, however, was never mandated by law. In 1823 the English courts stated:

---

1.  See S. Bysiewicz and G. MacDonnell, Married Women's Surnames, 5 Conn.L.Rev. 598 (1973); Carlsson, Surnames of Married Women and Legitimate Children, 17 NYLF 552 (1971); M. Hughes, And Then There Were Two, 23 Hastings L.J. 233 (1971); J. Lamber, A Married Woman's Surname: Is Custom Law?, 1973 Wash.U.L.Q. 779; MacDougall, Married Women's Common Law Right to Their Own Surnames, Women's Rts.L.Rep. 2 (Fall/Winter 1972–73); Comment, The Right of a Married Woman to Use Her Birth-given Surname for Voter Registration, 32 Md.L.Rev. 409 (1973).

"It has been asserted in the argument, that a married woman cannot legally bear any other name than that which she has acquired in wedlock; but the fact is not so; a married woman may legally bear a different name from her husband, and very many living instances might be quoted in proof of the fact." The King v. The Inhabitants of St. Faith's Newton, 3 Dowling & Ryland Reports 348, 352.

It would appear that the custom of the wife's taking the name of the husband at the time of marriage remained just that, custom, and never became law. It was and is a question of choice and reputation. See *Custer v. Bonadies,* 30 Conn.Supp. 385, 318 A.2d 639 (1974); *Davis v. Roos,* 326 So.2d 226 (Fla.App.1976); *Succession of Kneipp,* 172 La. 411, 134 So. 376 (1931); *Stuart v. Bd. of Supervisors of Elections,* 266 Md. 440, 295 A.2d 223 (1972); *Secretary of Comm. v. City Clerk of Lowell,* 373 Mass. 178, 366 N.E.2d 717 (1977); *Matter of Natale,* 527 S.W.2d 402 (Mo.App.1975); *In re Mohlman,* 26 N.C.App. 220, 216 S.E.2d 147 (1975); *State ex rel. Krupa v. Green,* 114 Ohio App. 497, 177 N.E.2d 616 (1961); *Sneed v. Sneed,* 585 P.2d 1363 (Okl.1978); *Dunn v. Palermo,* 522 S.W.2d 679 (Tenn. 1975); *In re Miller,* 218 Va. 939, 243 S.E.2d 464 (1978); *In re Strikwerda,* 216 Va. 470, 220 S.E.2d 245 (1975); *Doe v. Dunning,* 87 Wash.2d 50, 549 P.2d 1 (1976); *Kruzel v. Podell,* 67 Wis.2d 138, 226 N.W.2d 458 (1975).

Respondent, however, relies upon case law to the contrary holding that the long-standing custom of wives taking their husbands' names has ripened into common law. In a case where a Chicago lawyer had used her maiden surname after marriage, the Illinois Court of Appeals stated:

"[I]t is well settled by common-law principles and immemorial custom that a woman upon marriage abandons her maiden name and takes the husband's surname, with which is used her own given name. * * * [H]er husband's surname becomes as a matter of law her surname." *People ex rel. Rago v. Lipsky,* 327 Ill.App. 63, 67–70, 63 N.E.2d 642, 644–45 (1945).

The court then held that in light of the Illinois statute which required voters whose names had changed upon marriage to register anew, Ms. Rago could not remain registered under the maiden surname. The Illinois court relied, as do other courts and respondent, upon the leading case of *Chapman v. Phoenix National Bank of New York,* 85 N.Y. 437 (1881) for its holding that the custom of the wife's taking the name of the husband upon marriage has ripened into a common law requirement that the wife must do so when she marries. We do not believe that the facts in *Chapman,* supra, support respondent's position. In *Chapman,* supra, Verina S. Moore, a North Carolina schoolteacher, prior to her marriage, had purchased stock in the Phoenix Bank in her maiden surname. In February 1864, her stock and accrued dividends were seized by the United States government which claimed that she was a "rebel" and that the stock had been purchased to promote the Confederate cause during the war between the states. The then Ms. Chapman had no notice of the attachment as it was published only locally in New York and did not appear to contest the confiscation. Default judgment was entered. When she learned of the suit a year later, she brought suit to set the previous proceedings aside, claiming because it was brought in her maiden name, it was invalid for lack of notice. The court granted her claim on several grounds. It found that, as she was across Confederate lines, it was impossible for her to have received notice or to have appeared to contest the United States government's actions. The stocks were also insufficiently identified to be recognized as belonging to Ms. Chapman. The court then went on to state:

"For several centuries, by the common law among all English speaking people, a woman upon her marriage, takes her husband's surname. That becomes her legal name, and she ceases to be known by her maiden name. By that name she must sue and be sued, make and take grants and execute all legal documents. Her maiden surname is absolutely lost, and

472

she ceases to be known thereby." 85 N.Y. at 449.

This opinion has been often criticized, see Lamber, supra, at 780–91; Comment, supra, 32 Md.L.Rev. at 419–20; *Dunn v. Palermo,* supra, 522 S.W.2d 'at 683–84; *Kruzel v. Podell,* supra, 67 Wis.2d at 144–46, 226 N.W.2d at 461–62, and today it is not even given precedential effect in New York, the state which decided it. See *Application of Halligan,* 46 A.D.2d 170, 361 N.Y.S.2d 458 (1974) where the contrary result was reached without reference to *Chapman,* supra. We do not believe that *Chapman* is persuasive.

Although we admit that other courts, mainly relying upon *Chapman,* supra, have held to the contrary, we do not believe that the common law required a married woman to take the name of her husband. Admittedly, a woman, upon marriage, may follow what is today the overwhelming custom and voluntarily assume the name of her husband; but she is not required by common law, statute, or rule to do so. The commissioner erred in not allowing her to proceed with the dissolution of marriage action.

It is contended, however, that creditors and other interested parties can be confused by failure to list the married name of the party in the dissolution action. This is because the wife, by custom, is usually held out as Mrs. John Smith, if she is married to John Smith, no matter what her intention is in regard to retaining and using her maiden name.[2] Because of the possibility of confusion among interested parties or creditors due to dual names, the trial judge within his discretion may order that the caption of the petition include other names by which petitioner may or might have been known. This "aka" procedure is commonly followed to identify the parties to all whose interests may be affected. Also, the state has an administrative interest in insuring correlation between dissolution actions and statistical marriage and birth records so as to

permit parties to be traced through time. See *Weathers v. Superior Court,* 54 Cal. App.3d 286, 289, fn. 1, 126 Cal.Rptr. 547, 549, fn. 1 (1976). See also the discussion of record-keeping considerations in Annotation, supra, 67 A.L.R.3d at § 10, pp. 1281–82.

Respondent's refusal to grant petitioner's petition solely because it was filed under her maiden surname was error. The matter is remanded for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice, concurring.

I concur in the result.

---

**2.** At oral argument before this court, the attorney for petitioner stated that not only had petitioner never intended to be known as Mrs. Hulett, but, in fact, never had been so known. We do not doubt that petitioner had never intended to be known as Mrs. Hulett—this suit is evidence of that fact. We believe, however, that popular custom being what it is at this time, she was, contrary to her intention, known to at least some as Mrs. Hulett.